JOHN R. G. BABCOCK et al., Appellants, *v.* WILLIAM LIBBEY, Respondent.

Plaintiffs, on the 6th of November, 1868, wrote to S. of the firm of S. & Co., of which firm defendant was a member, stating that they understood S. & Co. had " a lien," etc., on the mills of the U. S. W. Co.; that said company was offering to buy of them on credit, and inquiring as to its " ability to pay."   Defendant answered under date of November 7, 1868, stating that said company consigned all its goods to them, for which they had a ready sale, sometimes on orders largely ahead of the production ; that so far as they could judge, it had made money; that they could only form an opinion as to its management from the period they had been in connection with it ; that it had nothing to conceal and would no doubt fairly answer all plaintiffs' inquiries.   In an action to recover damages for alleged fraudulent representations and concealments, it appeared that S. & Co., at the time the answer was written, had a chattel mortgage for $300,000 on the personal property of said company, which was on record; also a mortgage on its real estate.   Nothing was said of this, and defendant testified that the omission was because the mortgage was on record

and, therefore, was intentional. He did not admit, however, that it was with any wrong intent. *Held,* that the evidence did not warrant a finding of "a fraudulent suppression; that from the terms of the letter of inquiry, defendant might reasonably assume that the object was not to elicit information as to the "lien," etc., of the existence of which plaintiffs were aware.

Up to August, 1867, the U. S. W. Co. had consigned its goods to another firm. On that day the account and the goods on hand were transferred to S. & Co. It appeared that most of the old goods transferred depreciated in value and were sold below invoice prices. The market for woolen goods was a declining one from August, 1867, to the date of the letter, but for a few months prior to that date, good styles of goods were selling very well. The company changed from old to new styles, when the business went into the hands of S. & Co., and it was manufacturing good styles in large quantities, which sold well and freely in 1868, previous to November, and about twenty per cent of the goods were sold on orders in advance of production. Defendant admitted in December, 1870, that they were not making money in the woolen department. *Held,* that the representations in the letter in question, coupled as they were with a disclaimer of knowledge save during the period of the business connection between said company and defendant's firm, and with the suggestion that inquiries should be made of the company, would hardly justify a reliance on the letter as a recommendation; but that the evidence failed to show the falsity of the representations, or that it was written in bad faith; that it could not fairly be deemed to apply to the old transactions of the company or the old goods, and only spoke as of its date, not as to subsequent transactions.

Also *held,* that as the statements were not shown to have been untrue, it was immaterial what became of the property of the company, or whether defendant had falsely recommended the company to other parties.

(Argued April 23, 1880 ; decided September 21, 1880.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of defendant, entered upon an order nonsuiting plaintiffs on trial. (Mem. of decision below, 17 Hun, 131.)

This action was brought to recover damages alleged to have been sustained by reason of false and fraudulent representations and suppressions to induce plaintiffs to give a credit to the Utica Steam Woolen Company.

On 6th November, 1868, the plaintiffs, residing at Owego, N. Y., owned a large quantity of wool, which the Utica Steam

Woolen Company offered to buy on credit. The plaintiffs, on that day, addressed a letter of inquiry to A. T. Stewart, of the firm of A. T. Stewart & Co., of New York city, as follows:

"The Utica Steam Woolen Co. offer to buy of us quite a quantity of wool at four months. Now, we understand you are selling their goods, and have a lien, etc., on their mills. If we sell them the amount of wool, over 100 M., we shall be obliged to sell some of the paper — perhaps all. Will you buy it? If so, what will you give for it? If you do not feel like taking hold of it, please give us your views as to their ability to pay, and very much oblige."

On the next day the defendant, over the name of A. T. Stewart & Co., at the city of New York, dictated the following reply:

"Your favor of 6th inst., to our Mr. Stewart, is before us. The Utica S. W. Co. consign to us all their goods, for which we have a ready sale. Sometimes sold largely ahead of their product, on order. We can only form an opinion of their management from the period they have been in connection with us. As far as we can judge, they have made money. They say they have done better than at any former period. We have taken considerable orders ahead for their spring production, and anticipate a good season for their fabrics. They have nothing to conceal in regard to their position; and, we do not doubt, will fairly answer all your inquiries. We never buy paper — either manufacturer's or trader's."

It was admitted that the plaintiffs were, in fact, "influenced and induced to make the sale of said wool upon credit by, and did, in fact, rely upon, said letter of November 7th, 1868."

Stewart & Co. then held a mortgage of the real estate of the company for $200,000 to secure indebtedness, and a chattel mortgage on its personal property for $300,000, and the company was indebted to them in about the sum of $280,000.

In March, 1869, Stewart & Co. obtained judgment against the company for the amount of its indebtedness, and sold its personal property on execution.

The further material facts are set forth in the opinion.

*Henry Smith* for appellants.  Defendant, having undertaken to answer as to the company's ability to pay, was bound to write the whole truth ; and was not at liberty to suppress any fact within his knowledge bearing materially upon its responsibility. ( *Viele* v. *Goss,* 49 Barb. 96–98; affirmed, 51 N. Y.; 20 id. 287; 3 Kern. 322; 7 Wend. 9, 23 ; *S. C.,* 11 id. 374, 392, 397, 402; 53 N. Y. 465 ; reversing 58 Barb. 493 ; 25 id. 578; 3 Durn. & E. 51, 60–1; *Nickley* v. *Thomas,* 22 Barb. 652.) This duty is not diminished by the fact that any thing affecting the party's ability to pay is matter of public record. ( *Clark* v. *Rankin,* 46 Barb. 571, 577–8 ; *Sherman* v. *Johnson,* 56 id. 59, 63–4 ; *Haight* v. *Hayt,* 19 N. Y. 464; *Mead* v. *Bunn,* 32 id. 275, 280 ; *Robinson* v. *Wiley,* 15 id. 489 ; reversing 19 Barb. 157 ; *Brown* v. *Montgomery,* 20 id. 288 ; *Ward* v. *Wyman,* 17 Wend. 193 ; *Whitney* v. *Allaire,* 1 Comst. 206 ; *Culver* v. *Avery,* 7 Wend. 380.)  The proof was clearly sufficient to be left to the jury to determine whether a fraud had been perpetrated to plaintiffs' injury.  (67 N. Y. 292 ; 66 id. 84; Will. Eq. Jur. 147; 11 Wend. 389 ; 16 id. 654–5 ; 63 N. Y. 427–8 ; *Barry* v. *Croskey,* 2 Johns. & H. 21 ; *Gerhard* v. *Bates,* 2 El. & Bl. 476 ; 2 Sm. Lead. Cas. 147–153 ; id. 208–9 ; *Polhill* v. *Walter,* 3 Barn. & Adolph. 114; 10 Mees. & Welsb. 157 ; 8 Eng. Exch. 731 ; 12 Adolph. & El. [N. S.] 862, 864 ; 49 Barb. 97 ; 53 N. Y. 462, 465 ; 3 B. & P. 367, 371 ; 7 Metc. 252; 11 Wend. 397 ; Add. on Torts, 391, note m. ; Kerr on Fr., etc., 100.)  Especially so where one, under such circumstances as here, suppresses his own demands, judgments or mortgages. (49 Barb. 96 ; 7 Wend. 9 ; 11 id. 378, 87, 93, 98 ; 6 Johns. 181, 184; Kerr, 341, note 3 ; 1 Day, 22 ; 11 Metc. 356 ; 4 Robt. 533, 537 ; 3 Kern. 322, 331; 49 Barb. 97–8 ; 66 N. Y. 482.)  Deceptive silence, when information is asked, is sufficient to establish a fraudulent intent.  (4 Johns. Ch. 65, 70, 72 ; 9 Hun, 58.) The plaintiffs being in fact ignorant of the liens upon the company's property, it does not lie with the defendant to say they should have searched the records. ( *Weber* v. *N. Y. C., etc.,* 58 N. Y. 455–6 ; *Thurber* v. *Harlem, etc.,* 60 id. 330–1 ; id. 608; 66 id. 334 ; 52 id. 327–9 ; *Savage* v. *Stevens,* 126 Mass.

107–8.)   Plaintiffs were not bound to inquire as to the truth of
facts asserted or intentionally suppressed.   (*Clark* v. *Rankin*,
46 Barb. 571, 577–8; *Sherman* v. *Johnson*, 56 id. 59, 63–4;
*Haight* v. *Hayt*, 19 N. Y. 464; *Mead* v. *Bunn*, 32 id. 275,
280; *Robinson* v. *Wiley*, 15 id. 489; reversing 19 Barb. 157;
*Brown* v. *Montgomery*, 20 id. 288; *Ward* v. *Wiman*, 17 Wend.
193; *Whitney* v. *Allaire*, 1 Comst. 306; *Culver* v. *Avery*, 7
Wend. 380.)   The plaintiffs were not negligent or careless, after
receiving defendant's letter.   (*Addington* v. *Allen*, 11 Wend.
388, 391, 393; *Clark* v. *Rankin*, 46 Barb. 571; *Venezuela R.
R. Co.* v. *Kisch*, L. R., 2 H. L. Cas. 99; *Ross* v. *Estate, etc.*,
L. R., 3 Eq. Cas. 122; Addison on Torts, 311.)   Where the
necessary and inevitable consequence of one's conduct is to de-
fraud, the law imputes to him the intent to defraud.   (*Roebling*
v. *Duncan*, 14 Alb. Law Jour. 426; *S. C., Anonymous*, 67
N. Y. 598.)   The plaintiffs clearly had the right to rely upon
the entire good faith of the writer of the letter, and that he
would not be guilty of suppressing facts within his knowledge,
any more than of misrepresenting them. (*Munroe* v. *Pritchett*,
16 Ala. 785; *Snyder* v. *Findley*, Coxe [N. J.], 48; *The Cent.
Ry., etc.*, v. *Kisch*, L. R., 2 H. L. 120.)   It is not necessary
that the fraudulent representation or concealment be the sole
inducement to giving the credit or delivering the goods. (*Peo-
ple* v. *Genet*, 13 Hun, 98; *Hubbard* v. *Briggs*, 31 N. Y. 518,
532; *People* v. *Haynes*, 14 Wend. 547; *Allen* v. *Addington*,
7 id. 35; 11 id. 381; *Shaw* v. *Stine*, 8 Bosw. 157; *Yates* v.
*Alden*, 41 Barb. 172; Add. on Torts, 1008 [D. & B.'s Ed.])

*Francis Kernan* for respondent.   False representations as
to the solvency or pecuniary condition of another, to be action-
able as fraudulent, must at the time have been known to be
false by the party making them.   (*Haycraft* v. *Creasy*, 2 East,
92; *Marsh* v. *Falker*, 40 N. Y. 562; *Meyer* v. *Amidon*, 45
id. 169;   *Oberlander* v. *Speiss*, id. 175.)   The plaintiffs
have not shown any intention to deceive by the writer of the
letter of November 7th, 1868. (*Livingston* v. *Keech*, 34 N. Y.,
*supra*, 547; *Nelson* v. *Luling*, 46 How. 355.)   Positive fraud,

and an intent to deceive, must always be proved at law and never presumed. Innocence is always presumed until the contrary is proved. (4 Cow. 207; 1 C. & H. Notes, 298; *Marsh* v. *Falker*, 40 N. Y. 562.) The plaintiffs, under the circumstances, had no right to rely upon the statements contained in the letter of November 7th, 1868. (*Allen* v. *Addington*, 11 Wend. 417, 420.) The filing of the alleged chattel mortgage in Oneida county clerk's office, at Utica, where the mortgagor resided, was legal notice to all the world of its existence; and every person interested and dealing with the company was bound to take notice at its peril. (2 R. S. [4th ed.] 318, § 9.) The alleged chattel mortgage not being executed by the party purporting to execute it, and being a void instrument and a nullity, there can be no liability for the non-mention thereof in the defendant's letter. (*Watertown Fire Ins. Co.* v. *Grover & Baker S. M. Co.*, 20 Alb. Law Jour. 314.) Goods consigned and advances made do not establish any indebtedness. None arises until the goods are sold, proceeds applied and balance struck. (*Mottiam* v. *Mills*, 2 Sandf. 189; *Gihon* v. *Stanton*, 9 N. Y. 476.), One of the plaintiffs being in Utica, where the alleged chattel mortgage was filed, after the receipt of defendant's letter and before the wool was delivered, and having the means of obtaining correct information apart from the statements made to him by defendant, had no right to be deceived; and his neglect to avail himself of his opportunities was such gross carelessness as to be a bar to his right to recover. (*Long* v. *Warren*, 68 N. Y. 426; *Cowen* v. *Simpson*, 1 Esp. 290; *Brown* v. *Costello*, 11 Cush. 348–50; *Mooney* v. *Miller*, 102 Mass. 217, 220; *Davis* v. *Simms*, Lalor's Sup. [H. & D.] 284; *Clark* v. *Baird*, 7 Barb. 64; *White* v. *Seaver*, 25 id. 235, 242; *Clark* v. *Rankin*, 46 id. 507; *Bennet* v. *Buchan*, 19 Alb. L. J. 200; *Reed* v. *Gannon*, 50 N. Y. 349, 350; *Pendleton* v. *Fray*, 2 Penn. 202; *Hawley* v. *Cramer*, 4 Cow. 717; *Baker* v. *Bliss*, 39 N. Y. 70; *Brown* v. *Volkenning*, 64 id. 76; *Vandewalker* v. *Osmer*, 65 Barb. 556; 2 Kent's Com. 485.) The sale must be shown to have been made to the party recommended, to enable the plaintiffs to recover.

(*Allen* v. *Addington*, 11 Wend. 403.)   As the company's charter had expired at the time of the sale, no sale could be made, and this action will not lie.   (1 R. S. [4th ed.] 1210, §§ 1, 2; *Sturges* v. *Vanderbilt*, 73 N. Y. 384, 390; *Pasley* v. *Freeman*, 3 T. R. 54; *Eyre* v. *Dunsford*, 1 East. 318; *Haycraft* v. *Creasy*, 2 id. 92; *Ashlin* v. *White*, 3 Eng. Com. Law, 155; *Hutchinson* v. *Bell*, 1 Taunt. 557; *Vernon* v. *Keyes*, 12 East. 632; *Fapp* v. *Lee*, 3 Bos. & Pull. 367; *Hamar* v. *Alexander*, 5 id. 241; *Upton* v. *Vail*, 6 Johns. 180; *Young* v. *Covell*, 8 id. 25; *Allen* v. *Addington*, 11 Wend. 403; *Marsh* v. *Falker*, 40 N. Y. 562.)

Rapallo, J.  The refusal of the court to submit this case to the jury was entirely proper unless there was some substantial evidence of fraud on the part of the defendant, sufficient to have sustained a verdict in case the jury had found for the plaintiffs.   If the evidence was so slight that it would have been the duty of the court to set aside a verdict based upon it, a nonsuit was justifiable.

The most prominent fact relied upon by the plaintiffs was the suppression of any information respecting the chattel mortgage held by A. T. Stewart & Co., covering the personal property of the Utica Steam Woolen Company, coupled with the evidence of the admission of Mr. Libbey, that such suppression was intentional because the mortgage was on record, though he did not admit that it was with any wrong intent.   Laying out of view the consideration that this mortgage had no validity as against the creditors of the company, an intentional suppression of the fact of its existence, with a fraudulent intent, would under ordinary circumstances have been material, and the question of intent would have been for the jury, and the suppression, if fraudulent, would not have been excusable on the sole ground that the mortgage was on record.   But in this case the form of the inquiry made by the plaintiffs, of Stewart & Co., was, we think, such as to induce them to suppose that the plaintiffs were aware of the relations existing between Stewart & Co. and the Utica Steam

Woolen Company, and did not desire information in regard to the liens which Stewart & Co. had upon the property of the company, and which appeared upon record, but an opinion in view of all existing facts, as to the pecuniary ability of the company. The letter of inquiry begins by informing Stewart & Co. that the plaintiffs understand that Stewart & Co. have "a lien," etc., on the mills of the company, and inquires whether Stewart & Co. will buy their paper, and if not, asks for the views of Stewart & Co. as to the ability of the company to pay. In responding to such a letter the defendant might reasonably assume that it was no part of the purpose of the inquiry to elicit information as to the "lien," etc., which Stewart & Co. held, and which were matters of public record, but that for information as to the particulars of such "lien," etc., the plaintiffs having knowledge of their existence, would resort to the records. From the omission of the defendant to give information respecting them, under those circumstances, a jury would not have been warranted in finding a fraudulent intent. Had there been other liens not of record, and of which the plaintiffs had no knowledge or means of knowledge, a different question would be presented.

The residue of the evidence relates to the affirmative statements contained in the letter. One general feature of the letter, which first attracts attention, and cannot fail to be observed, is that it cautiously avoids expressing any opinion on the subject of the ability of the company to pay, or giving a direct answer to the question asked, but refers the inquirers to the company itself, stating that it will no doubt fairly answer all inquiries. The statement nearest to a recommendation which the letter contains is, " as far as we can judge they have made money. They say that they have done better than at any former period." These expressions, coupled as they are with a disclaimer of any means of forming an opinion as to their management, except from the period of their connection with the writers, which was very brief, and with the suggestion that the inquiries should be made of the company itself, were hardly sufficient to justify a prudent merchant in relying upon

the letter in question as a recommendation, or an assertion of the solvency or ability of the company.

The specific facts stated in the letter are, 1st. "The Utica S. W. Co. consign to us all their goods." It is not claimed that this was untrue. 2d. "For which we have a ready sale, sometimes sold largely ahead of their product, on order." It must be remembered that the letter speaks as of the date when it was written, November 7, 1868, and that the connection of Stewart & Co. with the company began in August, 1867. The evidence relating to the salability of the goods produced by the company before August, 1867, and the sacrifices made on those goods or on the goods consigned after November, 1868, of which the case contains much, does not legitimately impeach the statement as to the condition of the business on the 7th November, 1868.

The burden of proof was upon the plaintiffs to show that at that date the statement was intentionally false. · Neither is the evidence that the market in general was dull during the period spoken of furnish the necessary proof. That was a fact as much within the knowledge of the plaintiffs as of the defendant. It was incumbent upon the plaintiffs to show that, at the period of which the letter speaks, the products of the mills of the company, consigned by it to Stewart & Co., did not meet with a ready sale, and that they were not at times sold largely ahead on order.

The substance of the evidence to support this negative is, that the market generally for woolen goods was a declining one from August, 1867, when the account of the Utica Steam Woolen Co. was turned over by Spaulding, Hunt & Co. to A. T. Stewart & Co., down to November, 1868. Mr. Jacobson, one of the first named firm, testified that some of the goods they turned over to Stewart & Co. maintained their price, and others depreciated much, and none, he thinks, advanced. The defendant's letter, however, should not be construed as applicable to the old stock received from Spaulding, Hunt & Co., fifteen months previously, but to the current products of the mills, for it speaks of such as were consigned by the company to Stewart & Co., and such as were sold on order, before being

manufactured, and Mr. Jacobson admits that there may have been special things on which there was a profit, and that the mill may have woven them, that he cannot tell. He shows that he had no knowledge of the actual current transactions, and was not competent to falsify the statement in defendant's letter.

Mr. Savage, a former clerk of Stewart & Co., testified for the plaintiffs that the old stock received from Spaulding, Hunt & Co. sold considerably below the prices at which it was invoiced, but that for the few months preceding November, 1868, good styles of goods were selling very well, and that the mill in question produced some very fine styles, and about twenty per cent of their goods were sold on order, but that in all articles there was a dull demand, and that witness, who was entitled to a percentage on the profits of the woolen business of A. T. Stewart & Co., on leaving their employment expressed to Mr. Libbey chagrin and disappointment at not receiving profits, and was told by Mr. Libbey that they were not making money in the woolen department. This witness, however, did not leave until December, 1870, and Mr. Libbey's admission is of that date. The witness, however, corroborates Mr. Libbey's letter by stating, on his cross-examination, that some of the styles made at the mill sold very well on order in advance of production, from samples, and he mentions one sale in the fall of 1868 of a thousand pieces on order, at very good prices, $3 per yard he mentions, each piece containing twenty-five to thirty yards. He also further testified on cross-examination that after the mill came into the hands of A. T. Stewart & Co. it changed from old style to new, and large quantities of the new styles were sold in 1868, and that during 1868, before November of that year, they were selling well and freely.

This is in substance all the evidence introduced for the purpose of establishing the falsity of the statement that Stewart & Co. had a ready sale for the goods consigned to them by the woolen company, and sometimes sold largely ahead of their product on order. So far from tending to falsify, it rather tends to confirm the statement. It tends to show that the old

stock transferred fifteen months before, by Spaulding, Hunt & Co., had to be sold at a loss, but Mr. Libbey cannot be supposed to be speaking of that, when he speaks of goods consigned by the company and sold ahead of their production on order. This branch of the plaintiffs' case entirely fails.

The statement that as far as Stewart & Co. can judge, the company has made money, relates to the period of its connection with them. It cannot fairly be deemed to apply to the old transactions with Spaulding, Hunt & Co., or the result of the old stock which Stewart & Co. took out of their hands. It is at most the expression of an opinion, and the evidence entirely fails to show that it was made in bad faith.

There was no evidence introduced to falsify the statement, " They say that they have done better than at any former period."

The statement, " we have taken considerable orders ahead for their spring production," is not only not disproved, but is proved by the plaintiffs' witness Savage, who testifies to one order in the fall of 1868 to the amount of from $75,000 to $90,000, and says that about twenty per cent of the products of the mill was sold on orders.

That the defendants " anticipate a good season for their fabrics " is hardly a representation on which a charge of fraud can be based, and it is not disproved.

Taking the whole letter together, although its tone is not such as to cast suspicion upon the ability of the company, yet it is such as would naturally induce a prudent man, instead of treating it as a recommendation, to adopt the suggestion with which it closes, of addressing his inquiries to the company itself.

The evidence in relation to the overdrafts by the company on Stewart & Co., does not tend to show the falsity of any of the representations made. It appears that Stewart & Co., although objecting to the alleged overdrafts, nevertheless paid them, and thus extended to the company a larger credit than it was entitled to under its contract.

The rest of the plaintiffs' evidence relates to transactions

subsequent to the writing of the letter, and to the subsequent disposition of the property of the company, and a great deal of the evidence consists of alleged recommendations of the Woolen Company by the defendant to parties other than the plaintiffs. This class of evidence may be admissible in some cases, after the falsity of the representations has been established, but it cannot supply the place of that proof. If the statements made to the plaintiffs are not shown to have been untrue, it is immaterial to the issues in this action what became of the property, or whether the defendant falsely recommended the company to other parties. (*Mayer* v. *People*, March, 1880.) Each case must stand upon its own merits.

We think the evidence entirely fails to make out a case of a false and fraudulent recommendation. It is not necessary, therefore, to pass upon the technical points raised as to the organization of the company, the validity of the mortgage, and other points of that nature.

The judgment should be affirmed.

All concur, except Folger, Ch. J., and Danforth, J., dissenting; Finch, J., not on bench at argument.

Judgment affirmed.