App. Div.]  FIRST DEPARTMENT, JANUARY TERM, 1903.

LOUISE GOTTSCHALK, Respondent, *v.* JULIUS JUNGMANN, Appellant, Impleaded with Others.  (No. 1.)

*A mortgagor who has sold the mortgaged premises subject to the mortgage has the equity of a surety as between the mortgagee and grantee — his right to compel a foreclosure by the mortgagee — measure of damages where the mortgagee does not foreclose — receiver of rents.*

Where a mortgagor conveys the mortgaged premises, subject to the mortgage debt, to a person who does not covenant to pay such debt, the conveyance does not create the technical relation of principal and surety between the mortgagor and the grantee, but, as the land is the primary fund for the payment of the debt, the mortgagor, to the extent of the value of such land, has an equity similar to that of a surety.

Where, therefore, the mortgagee refuses to foreclose the mortgage at the request of the mortgagor, made after the maturity of the mortgage, the mortgagor is relieved from liability for any deficiency arising on the sale to the extent of any depreciation which has taken place in the value of the premises resulting from the delay.

In the present case, where the delay continued for a period of nineteen months, the court held that the mortgagor was entitled to be relieved from liability for a deficiency to the extent of the taxes, water rents and interest upon the mortgage which were permitted to accumulate after the notice to foreclose the mortgage was given.

*Quære,* as to liability for rents, a receiver of which might have been applied for.

VAN BRUNT, P. J., and PATTERSON, J., dissented.

APPEAL by the defendant, Julius Jungmann, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 29th day of May, 1902, upon the decision of the court rendered after a trial at the New York Special Term in an action to foreclose a mortgage directing the entry of a deficiency judgment against the defendant, Julius Jungmann.

*Joseph Fettretch,* for the appellant.

*Charles H. Collins,* for the respondent.

HATCH, J.:

On the 30th day of April, 1897, the appellant made, executed and delivered to the respondent a bond, whereby he agreed to pay the sum of $8,000 on the 30th day of April, 1900.  The bond contained

the usual covenant in the penal sum of $16,000 for the recovery of principal, interest and costs, etc.   Upon the same date he executed as collateral security for the payment of the bond a mortgage for the same amount, covering certain property on One Hundred and Thirty-third street in the city of New York.   On or about the 10th day of September, 1897, the mortgagor conveyed the mortgaged premises to one Wrenkow, subject to said mortgagee, the grantee, however, not assuming payment of the same.   The mortgage was not paid at maturity, and on the 8th day of May, 1900, within ten days after it became due, the mortgagor notified the mortgagee, in writing, that he had conveyed the mortgaged premises, as aforesaid, and directed that she immediately foreclose said mortgage, to the end that he might be relieved from further liability upon such bond and mortgage.   The mortgagee failed and neglected to foreclose the mortgage, as requested, and did not take any action or proceeding to foreclose the same until December 1, 1901.   The defendant Jungmann appeared and answered in the action, setting forth therein the facts heretofore stated, and averred that after the said notice had been served upon the mortgagee he then stood in the relation of surety to the debt, and on account of the neglect of the mortgagee to comply with the notice to foreclose, he was released from liability for any deficiency which might arise upon a sale of the mortgaged premises; that the said mortgagee, after such notice to foreclose, had allowed the grantee of the defendant to collect the rents of the premises, and also allowed taxes, assessment and water rates to accumulate against the said property, and also interest upon the mortgage.

After the action was at issue the parties entered into a stipulation whereby it was agreed that the plaintiff should proceed with the foreclosure action, procure a decree of sale therein; that the premises should be sold as speedily as possible, and that all questions as to personal liability of the defendant for any deficiency arising upon the sale should be determined after such sale had taken place, and when it was ascertained that a deficiency in fact existed.   Under the decree a sale of the premises was had in the month of February, 1902, and a deficiency arose thereupon of $1,919.67.   Upon a hearing before the court, after the sale, it appeared that the grantee of the premises had allowed the taxes and water rates to accumulate during the years 1900 and 1901, amounting, at the time of

the closing of title under the decree of foreclosure, to the sum of $325, and that no interest had been paid on the bond and mortgage from the 13th day of April, 1901. It also appeared that such grantee had received rentals from the premises, $931 from May, 1900, to December, 1901, when the foreclosure action was begun. The court held that the mortgagor did not stand in the relation of surety to the grantee of the premises; that he had no legal right to demand that the plaintiff foreclose the mortgage, or that she procure the appointment of a receiver of the rents, or otherwise protect the property, and that the request to foreclose did not relieve the defendant Jungmann from liability for any interest, taxes or other charges which had accumulated since the request was made, and thereupon directed judgment against him for the amount of the deficiency, with costs and disbursements. From the judgment so entered the defendant Jungmann appeals.

We think the court was wrong in holding that there was no relation of surety between the mortgagor and his grantee of the premises. It seems to be well settled that where a mortgagor sells and conveys premises subject to the mortgage debt, with no covenant on the part of the grantee to pay the same, there is not created by such transaction the technical relation of principal and surety; but, as the land is the primary fund for the payment of the debt, in respect thereto and to the extent of its value the grantee of the premises stands in the relation of a principal debtor, and there is raised out of such situation an equity in favor of the mortgagor similar to that of a surety. (*Murray* v. *Marshall,* 94 N. Y. 611; *Antisdel* v. *Williamson,* 165 id. 372.) Where the mortgagee, after a transfer of the title of the premises covered by the mortgage, extends the time of payment of the mortgage debt, or refuses upon the request of the mortgagor to take proceedings to collect the mortgage debt, the mortgagor will be relieved from liability for any subsequent deficiency, if it appears that the whole debt could have been collected from the land, or that it was in value equal to the mortgage debt, and *pro tanto* to the extent to which the property had depreciated between the time when the request was made and when the mortgage was foreclosed. (*Osborne* v. *Heyward,* 40 App. Div. 78.) Under such circumstances, to the extent of the value of the land, the mortgagor is equitably entitled to the protection of a

surety, and possesses all the rights inherent in such relation. (*Spencer* v. *Spencer,* 95 N. Y. 353.) Nothing which is contained in *Marshall* v. *Davies* (78 N. Y. 414) conflicts with or modifies this rule of law. Therein it was held that a mortgagee out of possession holding a mortgage upon real estate, secured by the bond of a mortgagor, in the absence of any notice of any change in the situation, and of any request to foreclose, could legally rely upon the personal liability of the obligor in the bond. In that case the court found as a fact that there was no request to collect the money upon the bond and mortgage when it became due, nor was there any request that the mortgage should be foreclosed, and it was held, under such circumstances, that the mortgagor remained liable for the full amount of the mortgage debt, together with taxes and other incumbrances which had accrued thereon. The court expressly declined to decide what would have been the effect of a notice to foreclose after maturity, had one been given.

In view of the law, as expressed in the authorities we have cited, it is clear that the mortgagor would be entitled to a deduction from the deficiency judgment to the extent that there was depreciation in the value of the land after notice was given to foreclose the same, and that the equitable relation of surety for the mortgage debt arose. The court was, therefore, wrong in holding and deciding that such relation did not exist, and that no relief could be granted on account thereof. If the defendant has shown himself upon the present appeal to be aggrieved by such ruling, then it is clear that the judgment based thereon for the deficiency cannot be sustained, and will either be wiped out wholly or *pro tanto.*

This case, however, presents a somewhat different situation from any case which has been called to our attention, or which our research has enabled us to find. There is no proof in the present case showing that the land has depreciated in value from what it was at the time when the mortgage was given, or that after the request was made to foreclose the same after maturity there was any depreciation in its value; consequently nothing is made to appear, so far as the technical value of the land is concerned, which entitled the appellant to any relief whatever. What does appear, however, is that after the request was made to foreclose the mortgage, the mortgagee permitted the grantee of the premises to collect the rents

thereof and appropriate them to his own use, and also permitted taxes, water rates and interest to accumulate in a considerable sum, and the claim of the appellant is that he is entitled to a deduction on account of these items, for the reason that the plaintiff was authorized to institute the foreclosure action and could have procured therein the appointment of a receiver and have impounded the rents, and applied them in discharge of the taxes, water rates and interest, and applied upon the mortgage debt any sum secured in excess of these charges. Concededly, the sale did not produce enough to pay the mortgage debt. This was some evidence, at least, to show that when the request to foreclose was made, the premises were of doubtful security to discharge the mortgage. The right to the appointment of a receiver would depend upon the fact that the mortgaged premises were insufficient as security to pay the debt. While the amount for which the property sold is not conclusive, it is some evidence, and the appellant will be at liberty to give proof upon this subject. If it be established, a case will have been made showing that a receiver might have been appointed, and the question presented is, was the mortgagee under an obligation to take this step for the protection of the mortgagor? It is clear that he would have been bound had the payment of the mortgage been assumed by the grantee of the premises. In *Marshall* v. *Davies* (*supra*) it was said: "We have held that where the mortgagor conveys to a third party, who assumes the mortgage, the relation of principal and surety arises between the mortgagor and his vendee; and that after notice of this relation the mortgagee is bound to observe it and abstain from doing any act to the prejudice of the mortgagor, or which would impair his recourse against the mortgaged premises in case he should be obliged to pay his bond and be subrogated to the mortgage. The mortgagee in such a case, after notice, cannot with impunity release the land, or extend the time of payment, or do any other act to the prejudice of the mortgagor; and the prohibited acts are determined by the law of principal and surety. (*Calvo* v. *Davies*, 73 N. Y. 215.)"

It is evident that if this be the duty and obligation of the mortgagor in a case where the grantee from a mortgagor has assumed the payment of the mortgage debt, in principle it must follow and be applied to the case of a mortgagor who has conveyed the prem-

ises to a grantee, subject to the mortgage, to the extent that the mortgagor stands in the equitable relation of surety. In other words, under such circumstances, the mortgagor is protected as a surety to the extent of the value of the land, and to that extent he is entitled to the same measure of protection that obtains ·in the case of a suretyship, where a grantee has assumed the payment of the mortgage. As to the value of the land, the mortgagee may not do any act, or suffer it to .be done, to the prejudice of the mortgagor, and, so far as such acts affect the value of the land, the mortgagor is entitled to protection. It would seem, therefore, where the land is only equal to the payment of the mortgage debt, or is in value insufficient for such purpose, and the mortgagee has been requested by the mortgagor to foreclose the mortgage and collect the debt, after the same has matured, that if the mortgagee disregards such notice and permits incumbrances to be created thereon, which are superior as liens to the lien of the mortgage, to that extent he permits an act to be done which reduces the value of the land for the discharge of the mortgage. It also seems to follow that if he omits to take legal proceedings to secure the full value of the land, he is guilty of an omission distinctly prejudicial to the right of the mortgagor. The mortgagee had the right in the present case to impound the rents and apply them to the payment of taxes, water rates and interest. Her failure so to do permitted the grantee of the premises to divert them to his own use, and thereby imposed an additional liability upon the mortgagor. The rents themselves were the product of the property, and the amount which it would produce was an inherent element of its value; and under the rule that the mortgagee, after notice, was bound to protect the rights of the mortgagor and make his burden as light as possible, he was called upon to take steps to secure what the property produced.

We conclude, therefore, that the defendant Jungmann was entitled to have such sums deducted from the deficiency judgment as were represented by the amount of the taxes, water rates and interest, which was permitted to accumulate after the notice to foreclose was given; and also to be allowed for rents which might have been impounded. In measuring this right, however, it is clear that the plaintiff is to be allowed only such sums as would have accrued, if, acting with reasonable diligence, she had foreclosed the mortgage

when the request was made upon her so to do.   These amounts can be arrived at upon a rehearing.

It follows, therefore, that the judgment for the deficiency should be reversed, and a new trial granted, with costs to the appellant to abide the event.

LAUGHLIN, J., concurred; VAN BRUNT, P. J., and PATTERSON, J., dissented.

INGRAHAM, J.:

I concur with Mr. Justice HATCH, except in so far as he holds that the defendant was liable for the rents that were collected by the owner of the property after notice to foreclose the mortgage was given by the appellant.   There is nothing to show in this record that the mortgagee would have been entitled to the appointment of a receiver of the mortgaged premises had she promptly commenced to enforce the mortgage.   There is no allegation or proof that at the time the notice was given the property was insufficient to secure the amount due on the mortgage.   It seems to be assumed that because, upon a subsequent sale under the judgment there was a deficiency, the mortgagee would at the time when she should have commenced her action to foreclose have been entitled to a receiver; but I can find no evidence to justify such an assumption.   Nor do I consider that it was the duty of the mortgagee to apply for a receiver. When the notice to foreclose was given it was her duty to take the usual and customary steps to enforce the mortgage, and it is the damages sustained by a failure to perform that duty that the appellant is entitled to recover.   If the mortgagee had at once commenced her action to foreclose the mortgage, and prosecuted the same with diligence, she would not have been liable because upon a subsequent sale there was a deficiency and the owner of the property had been able to collect the rents in the meantime.   The plaintiff was liable for the damages sustained by reason of her failure to do what the plaintiff requested her to do, viz., to at once proceed to foreclose the mortgage.   Upon the record it would seem that the damage thus sustained was the interest upon the mortgagor's debt for the time she delayed in commencing the foreclosure action and the liens for taxes and the water rates that accrued during that period, and that, I think, is the extent of her liability.

VAN BRUNT, P. J. (dissenting):

I dissent from the conclusion arrived at by the majority of the court. While, as between the mortgagor and the property, the mortgagor had the right to claim that the property should be first applied to the payment of the debt before recourse should be had to him, yet no such relation existed as between the mortgagor and the mortgagee as to entitle him to any of the rights of a surety. The case is entirely different from one where the grantee of premises assumes the payment of the mortgage. In that case he becomes the principal debtor and the original mortgagor becomes the surety. If, in this case, the mortgagor desired to prevent depreciation in the property upon which he had given the mortgage, it was a simple matter for him to pay his debt, which was the original obligation that he assumed, nobody being liable for any deficiency but himself. If he had done this, of course he would have the right to be subrogated to the security; and this was the true relation of the parties, and there was none of the elements of suretyship existing.

PATTERSON, J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.