SCHENECTADY SAVINGS BANK, Plaintiff, *v.* EDWARD B. ASHTON and Others, Defendants.

Supreme Court, Washington Special Term, February, 1923.

**Mortgages — foreclosure — overdue mortgage — when lessee in possession entitled to assignment — amount of tender.**

The foreclosure of a mortgage past due cannot be compelled either by the mortgagor or one claiming an interest in the premises under him.

Upon the foreclosure of a mortgage the interest of a lessee in possession under a lease of the premises given after the mortgage is sufficient to entitle the lessee to the benefit of the doctrine of subrogation, provided it makes a tender of the proper amount due the plaintiff in the action, with costs.

The lessee, however, as a condition of being allowed to exercise its right of subrogation, cannot be required to pay a counsel fee in addition to the statutory costs

nor as a condition precedent to an assignment of the mortgage be required to release the mortgagors and also the grantee of the property, who in the deed of conveyance to him assumed and agreed to pay the mortgage and its accompanying bond.

After a certain hotel property had been mortgaged by the owner he leased it to an incorporated holding company for a period of four years, with privilege of renewal, at a rental of fifteen per cent of the gross earnings, but in no event was the rent to be less than $20,000 a year. By the terms of the lease the holding company was given the privilege of a renewal for four years from February 1, 1926, unless given notice on or before September 1, 1925, that the lessor had sold the premises. Such a notice was given and the lessee since the date of its lease has been and now is in possession of the property. After the summons and complaint in an action to foreclose the mortgage had been served upon the lessee, the mortgage was assigned to a trust company, of which one of the mortgagors is the president and the owner of the mortgaged premises a director, but prior to such assignment the lessee was negotiating with the mortgagee for the purchase of the mortgage. Later the holding company served upon the trust company a written demand for an assignment to it of the bond and mortgage and at the same time made a tender of the amount due upon the mortgage with interest to date and a certain sum as costs. The trust company refused to comply with such demand or to accept the tender upon the following grounds: (1) That the holding company had not shown such an interest in the property as entitled it to demand an assignment of the mortgage; (2) that the amount tendered was insufficient for the reason that the trust company had incurred a liability of $7,500 for attorney's fees, which was not covered by the tender, and (3) that no offer was made to release the mortgagors and the subsequent grantee of the property who had assumed and agreed to pay the mortgage. *Held*, that the right of the holding company to subrogation was clear, and on its motion an order requiring the trust company to execute and deliver to the holding company an assignment of the bond and mortgage, such assignment to be without recourse except for covenants as to title and against the acts of the trust company as holder of the mortgage, will be granted, said order to provide also for a discontinuance of the foreclosure action.

MOTION by defendant Schenectady Holding Company, Inc., for an order directing the assignment to it of the mortgage being foreclosed herein, and for a discontinuance of the foreclosure action.

*Leary & Fullerton*, for defendant Schenectady Holding Company.

*Newman E. Wait*, for defendant Adirondack Trust Company.

*Sheridan P. Wait*, for defendants Edgar T. Brackett and Emma Corliss Brackett.

ANGELL, J. This action was instituted for the foreclosure of a mortgage given December 10, 1920, due January 1, 1922, to plaintiff by defendants Edgar T. Brackett and Emma Corliss Brackett, his wife. The mortgage covers the Mohawk Hotel property in the city of Schenectady, which at the time the mortgage was given was owned by defendant Brackett but which subsequently, and on September 1, 1922, was conveyed by him to defendant Ashton, who assumed and agreed to pay the mortgage in question and the

bond accompanying it. After the mortgage was executed and on October 27, 1921, defendant Brackett leased the mortgaged property to defendant Schenectady Holding Company, Inc., for a period of four years from February 1, 1922, at a rental of fifteen per cent of the gross earnings, but in no event was the rent to be less than $20,000 per year. The holding company had the privilege of renewing the lease for an additional period of four years from February 1, 1926, unless it was given notice on or before September 1, 1925, that the lessor had sold the premises. This notice was given. The holding company since the date of its lease has been and now is in possession of the property.

The moving papers show, in addition to the foregoing facts, that at the time of the conveyance of the property to Ashton he was the president and chairman of the business committee of the holding company; that after its board of directors learned of the purchase, a demand was made upon Ashton for a transfer of the property to it upon the ground that because of his fiduciary relationship to the holding company he held title only for it and its benefit; that Ashton refused to comply with this demand; that thereupon the holding company refused to pay rent to Ashton; that on November 18, 1922, Ashton began an action of ejectment against the holding company, alleging that it had breached its lease; that the holding company, November 22, 1922, sued Ashton in equity asking that he be required to convey the property to it. These actions are pending and undetermined.

This action of foreclosure was begun on December 6, 1922, by the service of a summons and complaint on defendant holding company. On December 18, 1922, the mortgage sought to be foreclosed was assigned by plaintiff herein to the Adirondack Trust Company. Prior to the assignment, as shown by the moving affidavits, the holding company was negotiating with plaintiff for the purchase of the mortgage. Defendant Brackett is president, and defendant Ashton is a director of the Adirondack Trust Company, and there is no suggestion in the affidavits in opposition to this motion that the trust company was not fully cognizant of the entire situation in regard to the mortgage and the mortgaged premises at the time it took the assignment.

This being the situation, on December 30, 1922, the holding company served upon the Adirondack Trust Company a written demand for an assignment to it of the bond and mortgage in suit, and at the same time made a tender of $153,400, being the amount of the mortgage with interest to that date, and $400 as the trust company's costs. The trust company refused to comply with the demand or to accept the tender, upon the grounds that the holding

company had not shown an interest in the property covered by the mortgage entitling it to demand an assignment; that the amount tendered was insufficient for the reason that the trust company had incurred a liability for attorney's fees amounting to $7,500 which was not covered by the amount tendered; and that there was not an offer to release from personal obligation on the bond defendants Edgar T. Brackett, Emma Corliss Brackett and Edward B. Ashton. Thereupon this motion was made for an order requiring the trust company to execute and deliver to the holding company an assignment of the mortgage and bond in question, and for a discontinuance of the foreclosure action.

The holding company's interest in the mortgaged premises, it being a lessee in possession, is clearly sufficient to entitle it to subrogation. Its lease was subsequent to the mortgage. If the mortgage is foreclosed its lease will be terminated. Nearly three years will elapse before the lease expires. It is presumably a valuable property right. The benefit of the doctrine of subrogation may be invoked by any party compelled to pay the debt of another to save or protect his own property. *Cole* v. *Malcolm*, 66 N. Y. 363; *Arnold* v. *Green*, 116 id. 566.

This right of subrogation has been extended to a junior mortgagee (*Trombly* v. *Cassidy*, 82 N. Y. 152); to a widow of a deceased mortgagor having a dower right (*Bayles* v. *Husted*, 40 Hun, 376); to an assignee of a term of years (*Averill* v. *Taylor*, 8 N. Y. 44); to a residuary devisee under the will of a deceased mortgagor (*Cleveland* v. *Rothwell*, 54 App. Div. 14); and, as here, to a lessee (*Glennon* v. *Spencer*, 163 id. 820). The doctrine has been applied in many other instances, which it is needless to specify, where necessary to protect property rights.

The trust company contends, however, that the holding company is not entitled to subrogation because of the pendency against it of the action of ejectment. The holding company's legal and equitable rights, so far as its claim to subrogation is concerned, are as if the action of ejectment was not pending. To hold otherwise would be an attempt to predetermine that action.

Thus, the holding company's right to subrogation seems clear, provided it made a tender of the proper amount. No claim was made by the trust company that there was not tendered the principal of the mortgage, accrued interest and the taxable costs. But it is asserted that the amount tendered was insufficient because it failed to include an attorney's fee of $7,500, which the trust company claims it has incurred since and in connection with its purchase of the mortgage. With this I cannot agree. If the trust company proceeded in this action to judgment and sale, it could recover

only its taxable costs. If the foreclosure is interrupted by the payment to it of the full amount of its debt, I can conceive of no reason why it should receive a bonus of $7,500, or any other sum. To hold otherwise might effectually bar a junior incumbrancer from his right of subrogation, and consequently make it impossible for him to protect his property interests. If the junior incumbrancer is obliged to pay a large counsel fee in any case as a condition of his right to subrogation, he must pay it himself. He cannot recover it from the owner of the equity. If the imposition of one such fee should not seem effectual to bar the junior incumbrancer's right, it would be a simple expedient to arrange enough successive assignments, each loaded with a similar burden, whereby the right of subrogation, which has been among the favorites of equity during the history of our courts, would be absolutely destroyed. In no case that I have been able to discover has one entitled to subrogation been required to pay a counsel fee in addition to the statutory costs as a condition of being allowed to exercise the subrogatory right. On the contrary, it has been held specifically, that payment of taxable costs only will be required. *Glennon* v. *Spencer, supra.*

The trust company's third reason for refusing to execute the assignment to the holding company is, as stated in its letter of refusal to the holding company, that " we believe it is also incumbent upon you to release from further personal obligation on the bond, Edgar T. Brackett, Emma Corliss Brackett and Edward B. Ashton." It seems clear to me that the trust company has no right to impose any such requirement as a condition precedent to its assignment of the mortgage. If I am correct in considering the holding company entitled to the assignment upon tender of the amount due with costs, no further obligation can be imposed upon it. A party entitled to subrogation is placed in all respects in the place of the party to whose rights he is subrogated. 27 Am. & Eng. Ency. of Law, 206; *Ellsworth* v. *Lockwood*, 42 N. Y. 89. This is not and cannot be done if there is a release of any parties from under the obligation of the bond.

Furthermore, the parties named have not, by any motion made or proceeding brought, asked to be relieved of their obligation on the bond. In fact, so far as defendant Emma Corliss Brackett is concerned, there seems to be no obligation, for it appears from the complaint in the foreclosure action that the bond was signed only by her husband. The request is made by a third party. It is a mere gratuity — something asked, so far as the record shows, without the knowledge or consent of the parties themselves. As such it may be disregarded.

It is asserted in one of the briefs submitted, however (though the record does not support the assertion), that a demand had been made by the parties specified for the foreclosure of the mortgage and a determination of their liability on the bond. If this be assumed as a fact, it is difficult to see how they could thereby presently benefit. Neither a mortgagor nor one claiming an interest in the premises under him can compel a mortgagee to foreclose his mortgage, though past due. 27 Cyc. 1547; *Marshall* v. *Davies*, 78 N. Y. 414. If the mortgagor demands the foreclosure of the mortgage, apparently the only penalty which the holder thereof would incur by disregarding the demand would be that the mortgagor might be relieved in whole or in part from liability for a deficiency, if it appeared that the land depreciated in value between the time of the demand and the time of the foreclosure, so that it was not then sufficient to pay the mortgage obligation: *Gottschalk* v. *Jungmann*, 78 App. Div. 171. A mortgagor, if he desires prompt determination of his liability on a bond, may, when he has sold the mortgaged property, himself take an assignment of the bond and mortgage and proceed against the land and the subsequent grantees thereof for his indemnity. *Marshall* v. *Davies, supra.*

The holding company is likewise entitled, under the conditions shown, to a discontinuance of the foreclosure action. *Manilla Anchor Brewing Co.* v. *Raw Silk Trading Co.*, 163 App. Div. 30.

The trust company should assign the mortgage being foreclosed to the holding company, such assignment to be without recourse except for covenants as to title and against its acts as holder of the mortgage.

Ordered accordingly.