JACOB HAKALA, Plaintiff, *v.* GEORGE S. VAN SCHAICK, LEON B. GINSBURG, BENJAMIN J. RABIN, LOUIS H. PINK, AUGUST BUSCH-MANN, HERMAN A. RAPPOLT and FRIEDA McDOWELL, Defendants.

City Court of New York, Special Term, Bronx County, June 13, 1939.

*Luke J. Le Rolle,* for the plaintiff.

*Edward F. Keenan* [*J. George Langfelder* and *Vivienne M. Camps* of counsel], for the defendants George S. Van Schaick and Louis H. Pink.

*Maurice Finkelstein* [*Raymond A. Tierney* and *Louis Timberg* of counsel], for the defendant Benjamin J. Rabin.

*Frank A. Rossini,* for the defendants August Buschmann, Herman A. Rappolt and Leon B. Ginsburg.

SCHACKNO, J. Each of the defendants, other then Frieda McDowell, moves to dismiss the complaint, upon the face thereof, under subdivision 5 of rule 106 of the Rules of Civil Practice, for failure to state facts sufficient to constitute a cause of action, and upon affidavits under subdivision 5 of rule 107 of the Rules of Civil Practice, asserting the existence of a final judgment on the merits in the Supreme Court of this State determining the same cause of action between the parties.

The complaint alleges that plaintiff executed a bond and mortgage in the sum of $6,000 on certain property in Bronx county to State Title and Mortgage Company in November, 1930, to become due on December 1, 1935. In 1931 plaintiff conveyed the mortgaged premises to Michael and Mollie Hogan. State Title and Mortgage Company issued its participation certificates for the full amount of this bond and mortgage and sold the entire issue to the defendant McDowell and the defendants Buschmann and Rappolt as

trustees for the benefit of Frieda McDowell. The defendant George S. Van Schaick, as Superintendent of Insurance of the State of New York, was appointed rehabilitator of State Title and Mortgage Company in August, 1933, when he took possession of its assets and conducted its business. In February, 1935, by an order of the Additional Special Term of the Supreme Court, he became vested with title to the assets and rights of action and was directed to liquidate the business. Defaults occurred under this certificated mortgage, for interest in December; 1933, water rates in January, 1934, and taxes in April, 1934. Foreclosure was begun in April, 1935, in which the plaintiff herein, the obligor on the bond, was joined as a party defendant. At the time of service of process upon him, May 18, 1935, the mortgage debt with added interest and taxes was $7,691.10. In June, 1935, the defendant Benjamin J. Rabin was substituted for Harry Rodwin as attorney for the plaintiff in the foreclosure proceeding. Nothing further was done until December, 1937, when the bond and mortgage were assigned to the certificate holders, the defendant McDowell and the defendants Buschmann and Rappolt as trustees for Frieda McDowell, whereupon these assignees re-served the summons and complaint in March, 1938. In this new proceeding the defendant Leon B. Ginsburg appeared as the plaintiff's attorney, it being further alleged that he had represented these clients since their acquisition of the mortgage certificates. The action proceeded to sale and a referee's deed was delivered on August 3, 1938. By that time the mortgage debt with added interest and taxes had risen to $10,178.98, resulting in a deficiency judgment against plaintiff herein of $1,678.98 upon a finding by an official referee pursuant to section 1083-a of the Civil Practice Act that the value of the mortgaged premises was $8,500. The complaint goes on to allege that solely by reason of the negligence of the defendants " in failing to properly, diligently, competently and efficiently prosecute to a conclusion the original action of foreclosure," the indebtedness was increased by an accumulation of interest and taxes in excess of the amount which would otherwise have been due thereon, and demands damages in the sum of $1,678.98 which is the amount of the deficiency judgment.

It is not alleged that plaintiff has paid the deficiency judgment (See *Maloney* v. *Nelson*, 144 N. Y. 182; *Van Schaick* v. *Burney*, 145 Misc. 887), and nowhere in the complaint is there any allegation with respect to the defendant Louis H. Pink, although the court will take judicial notice of the fact that he succeeded the defendant George S. Van Schaick, as Superintendent of Insurance of the State of New York, in May, 1935. So much for the face of

the complaint, the sufficiency of which will be considered after disposing of the motion under rule 107, if disposed of that can be.

The motions of the defendants George S. Van Schaick, Louis H. Pink, Benjamin J. Rabin and Leon B. Ginsburg, to dismiss the complaint under rule 107 on the ground that there exists a final judgment on the merits in the Supreme Court determining the same cause of action, is denied. Benjamin J. Rabin and Leon B. Ginsburg were attorneys in that proceeding, not parties. The Superintendent of Insurance of the State of New York was the party plaintiff in the original foreclosure action, but after assignment of the bond and mortgage to the certificate holders, the latter were substituted as parties plaintiff and the summons and complaint were re-served. At the time of the entry of judgment the Superintendent of Insurance was no longer a party to the action and could not have been named in the judgment. The doctrine of *res judicata* applies only to disputes for the same cause *between the same parties*. (*Hellstern* v. *Hellstern*, 279 N. Y. 327, 331; *Collins* v. *Hydorn*, 135 id. 320, 324.)

From the title of the action it would appear that the defendants Buschmann and Rappolt are sued individually rather than in their capacity as trustees, but the allegations of the complaint refer to them solely as trustees. The complaint does not set forth any cause of action against them individually. The affidavit of plaintiff's attorney on the motion under rule 107 also refers to them solely in their fiduciary capacity and since that motion raises but one question as to them, whether the Supreme Court judgment in which they are named as trustees is *res judicata,* this court will treat the action as though these defendants were named as trustees in the title of this action rather than merely dismiss the complaint for failure to state a cause of action against them individually.

It appears that on the motion to confirm the official referee's report ascertaining the value of the mortgaged premises prior to the entry of the deficiency judgment in the Supreme Court, the plaintiff in this action, as one of the defendants there, opposed such confirmation and the granting of a deficiency judgment, setting forth the same allegations upon which this action is based. It is plaintiff's contention that though the facts are the same the theories of law are different and, therefore, the new action is not barred by the prior judgment. In the Supreme Court his theory was laches, asserted as a bar to the entry of a deficiency judgment, while here his theory is negligence, asserted as a claim for damages by reason of the entry of that deficiency judgment. A judgment for plaintiff in this action must necessarily nullify the judgment against him in the Supreme Court. This court may not entertain

a collateral attack upon a judgment rendered between the same parties in another court of competent jurisdiction. " A judgment in one action is conclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first." (CARDOZO, Ch. J., in *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304. Cf. *Hellstern* v. *Hellstern, supra; Glacius* v. *Fogel*, 88 N. Y. 434.) The motion of the defendants Buschmann and Rappolt under rule 107 is granted and the complaint is dismissed as to them.

We come now to consideration of the motion under rule 106, subdivision 5, testing the sufficiency of the complaint upon the face thereof against the remaining defendants, George S. Van Schaick, Louis H. Pink, Benjamin J. Rabin and Leon B. Ginsburg. While the coincidence of the writer's authorship of certain legislation herein referred to doubtlessly emphasizes this court's familiarity with the horizon upon which this litigation appears, nevertheless in determining the sufficiency of this complaint the court is not required to pretend ignorance of matters of common knowledge and public record. Judicially noticed, such matters may be here considered as though embodied in the complaint. (*Schieffelin* v. *Hylan*, 236 N. Y. 254, 263, 264; *Walsh* v. *Trustees of N. Y. & Brooklyn Bridge*, 96 id. 427, 438; *City of Buffalo* v. *New York Central R. R. Co.*, 125 Misc. 801, 804; affd., 271 N. Y. 658.)

A public emergency existing, the Legislature of this State in 1933 enacted laws for the protection of holders of mortgage certificates and property owners as well. Chapter 793 of the Laws of 1933 (Ex. Sess.) added sections 1077-a and 1077-b to our Civil Practice Act, temporarily staying foreclosure proceedings and legal actions to recover the indebtedness provided interest and taxes were paid; chapter 794 of the Laws of 1933 added sections 1083-a and 1083-b to that act to alleviate abuses growing out of the recovery of deficiency judgments. An unusual economic condition required unusual measures. (*Matter of People* [*Title & Mortgage Guarantee Co. of Buffalo*], 264 N. Y. 69; *Klinke* v. *Samuels*, Id. 144. Cf. *Home Bldg. & Loan Assn.* v. *Blaisdell*, 290 U. S. 398.) By virtue of the certificate contracts the " guarantee " companies were the exclusive agents of certificate holders for the enforcement of the latter's rights arising out of defaults under the mortgage collateral. By chapter 745 of the Laws of 1933 (generally referred to as the Schackno Act), as amended by chapter 780 of the Laws of 1933 (Ex. Sess.), the Legislature author-

ized proceedings for the reorganization of certificated mortgage investment issues. (*Matter of People* [*Title & Mortgage Guarantee Co. of Buffalo*], *supra; Matter of New York Title & Mortgage Co.*, 156 Misc. 186.) The machinery thus created for the protection of mortgage certificate holders was additional to the powers conferred upon the Superintendent of Insurance with respect to the companies of issue by article XI of the Insurance Law. Later came the Mortgage Commission Act (Laws of 1935, chap. 19) which recognized the conflict of interest between the general creditors of the companies being rehabilitated or liquidated by the Insurance and Banking Departments of the State and the countless holders of mortgage certificates who had found the " guaranty " of their investments to be worthless. With the creation of the Mortgage Commission, this new agency of the State in 1935 took over the administration of certificated mortgage issues from the Superintendents of Insurance and Banks. The mere recital of these facts recalls to poignant memory the plight of certificate holders on the one hand and property owners on the other. The severity of the economic depression with its attendant closing of the nation's banks, climaxed by the " bank holiday " of 1933, created a shortage of funds which not only prevented so many property owners from paying interest and taxes, but likewise prevented certificate holders from advancing foreclosure expenses. The Superintendent of Insurance was necessarily restricted in the advancement of foreclosure costs by his statutory obligations to the general creditors of these companies. In administering their funds he could not grant preference without creating prejudice. In this case as in ever so many others, it was not until the mortgage had been assigned to the certificate holders that they were able to complete the foreclosure and take title to the property.

It is against this background that we must read the plaintiff's complaint that, having sold his property in 1931 subject to a mortgage securing his bond, he has been called upon to pay a deficiency judgment because of the " negligence " of the defendants in failing to promptly complete foreclosure against plaintiff's grantee. We might note parenthetically that plaintiff has received the benefits of section 1083-a of the Civil Practice Act, in that the value of the property has been offset against the mortgage indebtedness without regard to the amount of the bid at the referee's sale and he has also received the benefit of section 1083-b of the Civil Practice Act, without which an action might have been maintained against him for his full indebtedness on the bond without resort to foreclosure. Now, having unsuccessfully attempted to stay a deficiency judgment against him in favor of the certificate

holders as assignees of the bond and mortgage, plaintiff in this law suit demands an indemnity for the amount he has been called upon to pay from those who were charged with the enforcement of the certificate holders' rights under that mortgage. It would seem that even if properly pleaded as a defense in the foreclosure action, plaintiff could not have there defeated a deficiency judgment against him in the absence of a request to foreclose or an offer to pay. (*Glacius* v. *Fogel*, 88 N. Y. 434, 442; *Kings County Trust Co.* v. *Derx*, 237 App. Div. 548; *Schenectady Savings Bank* v. *Ashton*, 120 Misc. 268.) Aside from that, however, this complaint does not set forth a cause of action in negligence against defendants Van Schaick and Pink. They cannot be charged with failure to act more promptly in the unprecedented situation which occurred during those economically tempestuous years. Furthermore, even assuming negligence to have existed, it is not actionable except by one to whom the duty of due care was owed. " Negligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right. ' Proof of negligence in the air, so to speak, will not do.' * * * ' Negligence is the absence of care, according to the circumstances.' " (CARDOZO, Ch. J., in *Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339, 341.)

A further ground appears for the dismissal of the complaint against defendants Van Schaick and Pink. The Superintendent of Insurance of the State of New York, when acting as a rehabilitator or liquidator pursuant to article XI of the Insurance Law, is a statutory receiver. (*Matter of People* [*Title & Mortgage Guarantee Co. of Buffalo*], *supra*.) As such he may not be held to respond personally in damages for the acts or omissions of his agents and subordinates. (*Cardot* v. *Barney*, 63 N. Y. 281; *Reinhardt* v. *Lehman*, 248 App. Div. 764; *Farmers' L. & T. Co.* v. *Central R. R. of Iowa*, 7 Fed. 537, 538; 1 Clark on Receivers [2d ed.], § 391.)

The cause of action alleged against the attorneys, the defendants Benjamin J. Rabin and Leon B. Ginsburg, cannot be maintained without an extension of liability in the field of negligence which was rejected by the Court of Appeals in *Ultramares Corp.* v. *Touche* (255 N. Y. 170). These defendants were not the attorneys for plaintiff. Between them there was neither privity of contract nor employment. (*Matter of Cushman*, 95 Misc. 9, 13. Cf. *Jaillet* v. *Cashman*, 235 N. Y. 511; *Courteen Seed Co.* v. *Hong Kong & S. B. Co.*, 245 id. 377.) In 1931 Judge CARDOZO observed, " The assault upon the citadel of privity is proceeding in these days apace." (*Ultramares Corp.* v. *Touche, supra*, at p. 180.) More recently the plea has been for a functional approach to legal problems without resort to magic " solving words " of

traditional jurisprudence. (See Cohen, Transcendental Nonsense and the Functional Approach, [1935] 35 Col. L. Rev. 809. But see Kennedy, Functional Nonsense and the Transcendental Approach, [1936] 5 Fordham L. Rev. 272; More Functional Nonsense, [1937] 6 id. 75.) Privity of contract has been dispensed with between manufacturer and user in the manufacture of a chattel in circumstances pointing to an unreasonable risk of serious bodily harm to those using it thereafter. (*MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382.) The ramparts have been stormed but the citadel still stands. " Beyond all doubt, the general rule is that the obligation of the attorney is to his client and not to a third party." (*Savings Bank* v. *Ward*, 100 U. S. 195, 200.) Indeed, this is as it should be. In our blessed democracy not even the State can impose an intervening loyalty between that of a lawyer to his client within honorable bounds. On foundations such as this rests the structure of our civil liberties. Shall the attorney be liable in negligence to third persons under circumstances exonerating him from liability to his client? Judge CARDOZO predicted the answer. " Negligence, moreover, will have one standard when viewed in relation to the employer, and another and at times a stricter standard when viewed in relation to the public." (*Ultramares Corp.* v. *Touche, supra*, 188.) And in *Moch Co.* v. *Rennselaer Water Co.* (247 N. Y. 160, 168) Judge CARDOZO said, " Every one making a promise having the quality of a contract will be under a duty to the promisee by virtue of the promise, but under another duty, apart from contract, to an indefinite number of potential beneficiaries when performance has begun. The assumption of one relation will mean the involuntary assumption of a series of new relations, inescapably hooked together. Again we may say in the words of the Supreme Court of the United States, ' The law does not spread its protection so far.' (*Robins Dry Dock & Repair Co.* v. *Flint*, 275 U. S. 303.) "

Where the allegation of negligence falls short of fraud, as here, we can only conclude that the ensuing liability " is one that is bounded by the contract, and is to be enforced between the parties by whom the contract has been made." (*Ultramares Corp.* v. *Touche, supra*, at p. 189.)

The motion to dismiss the complaint under rule 106 is granted as to the defendants Van Schaick, Pink, Rabin and Ginsburg. Settle order on two days' notice.