OPINION OF THE COURT
Joseph Jaspan, J.
This is an action for malpractice against an attorney. The defendant moves pursuant to CPLR 3211 (subd [a], pars 3, 7) to dismiss the complaint upon the ground that the plaintiff does not have legal capacity to sue since she was not in privity with the defendant, and failing that to reduce the ad damnum clause from $500,000 to $250,000, the amount claimed in an underlying action.
In 1931 in a malpractice case involving an accountant, Judge Benjamin Cardozo wrote that: “The assault upon the citadel of privity is proceeding in these days apace. How far the inroads shall extend is now a favorite subject of juridical discussion” (Ultramares Corp. v Touche, 255 NY 170, 180).
Fifty years later privity in the area of malpractice remains the subject of discussion and speculation (53 NY State Bar J 108) with little intervening progress and *930 certainly no storming of the bastions of the status quo in this State.
Since Ultramares there have been few relevant cases in this State and as far as can be ascertained only two which reached the appellate level. They do represent, however, a tendency to whittle away at the strict application of the privity rule.
Ultramares denied recovery upon grounds of privity to a third-party creditor who had extended funds to a corporation in reliance upon figures prepared and furnished by the defendant accounting firm but not without dicta to the effect that its ruling would not extend to cases involving reckless indifference to the truth or to cases of fraud.
Subsequently in 1939, 1963 and 1977, several courts reaffirmed the rule that attorneys are not personally liable to third persons in cases of simple negligence (Hakala v Van Schaick, 171 Misc 418; Maneri v Amodeo, 38 Misc 2d 190; Victor v Goldman, 74 Misc 2d 685, affd without opn 43 AD2d 1021).
However, in Victor it was noted that the privity rule did not extend to wrongful behavior or deceit. The court wrote (74 Misc 2d 685, 685-686, supra):
“The more difficult question involves the attorney’s liability to third parties. In general, it is established that an attorney owes no duty to third persons for acts committed bona fides in the performance ofi his obligation to his client (Hakala v. Van Schaick, 171 Misc. 418) and this remains the rule even where negligence results in damage to the third party. (Dallas v. Fassnacht, 42 N. Y. S. 2d 415, 417; Vernes v. Phillips, 266 N. Y. 298, 301.)
“However, should it appear that the third party’s damage was occasioned by the attorney’s wrongful act, fraud, or collusion, a different result must obtain (7 Am. Jur. 2d, Attorneys at Law, § 196; Dallas v. Fassnacht, supra; Kasen v. Morrell, 18 Misc. 2d 158, 183 N. Y. S. 2d 928; Savings Bank v. Ward, 100 U. S. 195).”
In Schwartz v Greenfield, Stein & Weisinger (90 Misc 2d 882), the court referred to the “obsolescence of the strict privity doctrine” in holding that an attorney who under *931 took but failed to file and perfect security agreements was liable to a third-person lender who was damaged thereby. In part the court noted that (p 884) : “ ‘[w]ith the case of McPherson v. Buick Motor Co. [217 NY 382, 11 NE 1080 (1916)] the privity requirement began to assume less importance in one area of the law after another. The court began to recognize liability to third persons where the actor negligently rendered services which he should have recognized as involving a foreseeable injury to the third party’ ”. (Accord 45 ALR3d 1181, 1184-1185.)
Schwartz does not appear to have reached any appellate court. However, later the same year the Court of Appeals, in White v Guarente (43 NY2d 356), expressly extended the liability of accountants to third parties where they assumed an obligation imposed by law. The court wrote (pp 361-362): “Here, the services of the accountant were not extended to a faceless or unresolved class of persons, but rather to a known group possessed of vested rights, marked by a definable limit and made up of certain components (see Ultramares Corp. v Touche, 255 NY 170, 182-185, supra). The instant situation did not involve prospective limited partners, unknown at the time and who might be induced to join, but rather actual limited partners, fixed and determined. Here, accountant Andersen was retained to perform an audit and prepare the tax returns of Associates, known to be a limited partnership, and the accountant must have been aware that a limited partner would necessarily rely on or make use of the audit and tax returns of the partnership, or at least constituents of them, in order to properly prepare his or her own tax returns. This was within the contemplation of the parties to the accounting retainer. In such circumstances, assumption of the task of auditing and preparing the returns was the assumption of a duty to audit and prepare carefully for the benefit of those in the fixed, definable and contemplated group whose conduct was to be governed, since, given the contract and the relation, the duty is imposed by law and it is not necessary to state the duty in terms of contract or privity” (emphasis added).
While New York courts avoided any rule which might open the floodgates to actions in malpractice by third per *932 sons, California moved boldly ahead (Biakanja v Irving, 49 Cal 2d 647; Lucas v Hamm, 56 Cal 2d 583, cert den 368 US 987; Heyer v Flaig, 70 Cal 2d 223).
The California rule as set forth in a 1971 case, Donald v Garry (19 Cal App 3d 769, 771-772) is as follows: “The determination of whether the duty undertaken by an attorney extends to a third person not in privity ‘involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the forseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant’s conduct and the inj'ury suffered, the moral blame attached to the defendant’s conduct, and the policy of preventing future harm.’ ”
This rule extends but is not inconsistent with any recent holding in our appellate courts.
In Matter of Douglas (104 Misc 2d 430), the Surrogate referred to the changing legal trend in New York and the reversal in California of the traditional precept that a lawyer’s liability for negligence is circumscribed. He concluded that the California cases and White v Guarente (43 NY2d 356, supra) support a holding that (p 434): “any decision extending an attorney’s liability to third parties should be based on public policy involving the balancing of relevant considerations.”
On June 25, 1963 one Max Baer died, intestate, while a patient at the Mount Sinai Hospital and left surviving a wife Helia DeWitt Baer (the plaintiff herein) and a son Stephen DeWitt Baer.
On or about January 23, 1965 the wife was appointed executrix of the estate of the deceased and in her capacity as personal representative retained the services of one John E. Dolan, Esq., for the purpose of commencing a wrongful death action against the hospital and attending physicians for their malpractice in treating the deceased. (EPTL 5-4.1.) The complaint alleges that “plaintiff Helia DeWit Baer [sic] has been damaged in the sum of $250,-000.”
In November, 1970 her attorney in that action became ill and Mrs. Baer as executrix retained Aaron J. Broder, *933 Esq. (the defendant herein) to continue the prosecution of the wrongful death action.
On January 24, 1973 the action was settled for the sum of $5,000.
Thereafter, the plaintiff claimed that the settlement was made without her consent and in January, 1974 she moved to set it aside and to restore the case to the Trial Calendar. In an order dated February 11, 1974 (affd 52 AD2d 793), that motion was denied in an opinion which stated: “Now, more than a year later, plaintiff claims that she did not consent to the settlement. The excuse offered for the delay in making this motion is not sufficient, particularly in the absence of an affidavit of merits, or a showing that the settlement was unreasonable. This action has been pending for some 12 years. Plaintiff’s loches, delay in prosecution and lack of sufficient papers bar the relief requested.”
On or about February 13, 1979 Mrs. Baer, in her individual capacity, instituted this malpractice action against the defendant attorney and prayed for a recovery in the sum of $500,000 alleging a negligent failure to prosecute the afore-mentioned death action.
The defendant now claims that since he was retained by Mrs. DeWitt Baer in her capacity as executrix, he may not now be held liable to her in her individual capacity.
It is the undisputed rule that an action for wrongful death must be instituted by a duly appointed personal representative (Mogavero v Stony Cr. Dev. Corp., 53 AD2d 1021; EPTL 5-4.1). But EPTL 5-4.4 further provides that damages recovered in a wrongful death action, whether by award or settlement are held by the personal representative as a “statutory trustee” for those distributees having a vested beneficial interest in the fund as a result of having sustained a pecuniary loss (Matter of Summrall, 93 Misc 2d 420; Matter of Finkelstein, 1 Misc 2d 1067, affd 6 AD2d 1055).
A cause of action for wrongful death is not an asset of the estate of the decedent, but rather is a property right of the beneficiaries (Matter of Summrall, supra; citing *934 Central N. Y. Coach Lines v Syracuse Herald Co., 277 NY 110; Baldwin v Powell, 294 NY 130).
This property right of the beneficiaries accrues to and vests in them upon the death of the decedent and once vested that right is descendible, and transferable (Rice v Postal Tel.-Cable Co., 174 App Div 39, affd 219 NY 629; Matter of Thompson, 36 Misc 2d 638).
In view of these applicable rules of law, this court could carve another exception to the principle of privity. However, it seems to be time to embrace the California rule and make the determination based on public policy involving the balancing of relevant considerations.
Plaintiff was not a member of a faceless or indeterminate class of persons in the wrongful death action and is not for that reason precluded from instituting this action (Gordon v Holt, 65 AD2d 344, 349, mot for lv to app den 47 NY2d 710).
The. plaintiff and defendant were engaged in a face-to-face relationship in which defendant undertook to prosecute her personal right of recovery and that of her son in a manner consistent with their best interests notwithstanding that the action was brought in her name as a legal representative of the decedent.
If defendant breached a duty to the plaintiff in that action the foreseeable harm to plaintiff individually as the widow was the obvious and the direct result thereof.
In a real sense, the plaintiff in this action was also one of the real parties in interest in the wrongful death action.
In the absence of any statutory direction or prohibition, any semantical difference elevates form over substance.
Indeed, the Court of Appeals in Carrick v Central Gen. Hosp. (51 NY2d 242), has indicated that it will not determine a right of action on “some highly abstract, theoretical plane”. In that case it held that the dismissal of a wrongful death action prematurely commenced by a person who had not yet been designated as an executrix extends the Statute of Limitations for a period of six months thereafter (CPLR 205, subd [a]).
The balancing of the factors in this case and the public policy which states that a suitor is entitled to have one *935 adjudication of the merits or substance of his cause timely instituted (Carrick v Central Gen. Hosp., supra; citing Buchholz v United States Fire Ins. Co., 269 App Div 49, 51; and noting Utica Sheet Metal Corp. v Myers-Laine Corp., 45 AD2d 116, 118) compels the conclusion that the citadel of privity is not invulnerable to the assault made upon it in this case.
This conclusion is not prejudicial to the interests of the defendant for the grant of his motion to dismiss based upon plaintiff’s legal capacity to sue would, under the Carrick decision, trigger plaintiff’s right to institute another suit in her representative capacity and thus vicariously also embrace a claim for the decedent’s son who is not now a party plaintiff.
Plaintiff’s motion to amend the title of the action to indicate that the plaintiff is the executrix is denied. Defendant’s motion to reduce the ad damnum clause to $250,-000 is granted without opposition.