Cyrus HASHEMI, Plaintiff,

v.

Thomas G. SHACK, Jr., Abourezk, Shack & Mendenhall, P.C., and Shack & Kimball, P.C., Defendants.

No. 84 Civ. 0796 (ADS).

United States District Court, S.D. New York.

Oct. 30, 1984.

Kornstein, Veisz & Wexler, New York City (John Devlin, New York City, of counsel), for plaintiff.

Bergadano, Zichello & Babchik, New York City (Joseph A. Bergadano, New York City, of counsel), for defendants.

MEMORANDUM OPINION
AND ORDER

SOFAER, District Judge:

Plaintiff, Cyrus Hashemi, is a citizen of the Islamic Republic of Iran and the Dominican Republic. Although Hashemi now resides in London, during all times relevant to this litigation he resided in New York, where he was acting as Senior Advisor to Bank Sepah. Defendant, Thomas G. Shack, Jr., is an attorney licensed to practice law in Washington, D.C., and was a member of the defendant, Abourezk, Shack & Mendenhall, P.C., a Washington, D.C. firm, whose name was subsequently changed to Shack & Kimball, P.C. The basis for jurisdiction is diversity of citizenship, 28 U.S.C. § 1332 (1982), and New York law applies.

Hashemi seeks damages against defendants for legal malpractice based upon defendants' alleged failure to protect his interests in three civil suits in the New York State Supreme Court, in which he had been named as a defendant. Defendants' alleged failure to protect Hashemi's interests resulted in defaults in those actions, causing Hashemi to retain separate counsel to vacate the defaults. Hashemi's second cause of action is based upon the defend- ants' alleged refusal to submit a signed affidavit in connection with Hashemi's motions to vacate the defaults, unless Hashemi executed a waiver and release of all claims against defendants. Plaintiff argues that this refusal constituted willful misconduct; gross, reckless and wanton indifference to professional responsibilities; and an egregious breach of fiduciary duty. Complaint, ¶¶ 20–22. Plaintiff and defendants have moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P. The material facts are not in dispute and, for the reasons that follow, defendants' motion for summary judgment is granted.

I.  *The Attorney-Client Relationship.*

The requisite elements of a legal malpractice action are (1) the existence of an attorney-client relationship creating a duty of care in the attorney, and (2) the failure to perform, or breach of, that duty. 7A C.J.S. *Attorney and Client* § 255, at 461 (1980). In general, the relationship of an attorney and client is contractual, and the rules governing contract formation determine whether such a relationship has been created. *Id.* § 169, at 249. Formality is not an essential element in the employment of an attorney, and since "[t]he initial arrangements for representation are often informal ..., it is necessary to look at the words and actions of the parties." *People v. Ellis*, 91 Misc.2d 28, 35, 397 N.Y.S.2d 541, 545 (N.Y.Sup.Ct.1977).

On February 5, 1981, Hashemi telephoned defendant Shack concerning three multi-million dollar actions pending against him in the New York State Supreme Court. At the time of this request, the defendant Abourezk, Shack and Mendenhall, P.C., was counsel to the Government of Iran, and plaintiff allegedly made this request "on the grounds that the New York civil actions were based upon the plaintiff's duties as a Senior Advisor to Bank Sepah which had by then been nationalized by the Government of Iran." Shack Affidavit at 3. Hashemi argues that in this conversation and in a follow-up letter to Shack, dated February 6, 1981, he "requested defendants' professional assistance" in these

three actions. Cross-Motion for Summary Judgment at 4–5.

Shack argues that Hashemi, "in his communication of February 6, 1981, did not request either Abourezk, Shack & Mendenhall, P.C., or [Shack] personally to represent him in the New York actions...." Shack Affidavit at 3. Instead, Hashemi asked Shack if he would "arrange New York counsel to take care of this as this relates to [his] responsibility as Senior Advisor...." Shack Affidavit, Ex. A. (Letter of February 6, 1981). Shack asserts further that, in the telephone conversation of February 5, 1981, he told Hashemi that neither he nor his law firm could represent him, nor retain counsel for him at the expense of the Government of Iran, without Iran's express authorization; Shack offered, however, to advise the Foreign Ministry of the Government of Iran that they should provide Hashemi with defense counsel. Shack Affidavit at 3. Shack also claims he told Hashemi that he and his firm would monitor the case, but that "plaintiff should protect his own interests in the interim by alerting counsel representing him in other matters." Shack Affidavit at 3–4.

■ These contrasting versions fail to create a genuine dispute of material fact, because the absence of any contractual agreement between plaintiff and defendants on the issue of representation is established by Hashemi's letter of February 6, 1981. This letter clearly reflects Hashemi's understanding that defendants would not represent him: "I would appreciate [it] if you [would] arrange New York counsel to take care of this as this relates to my responsibility as Senior Advisor, looking over the activities of Bank Sepah, right after the Revolution." Shack Affidavit, Ex. A (Letter of February 6, 1981). Another letter from Hashemi to Shack, dated March 2, 1981, also reflects Hashemi's understanding that Shack did not represent him, but rather that Shack was trying to get authorization from Iran to act as, or to obtain, counsel for him; the letter also reveals that Hashemi knew that action needed to be taken immediately in the New York actions to avoid defaults:

> The 20 days is up and I would suggest that you communicate as quickly as possible so we may not face any initial problem with this lawsuit. I do appreciate your efforts and the fact that you have advised our foreign ministry to provide defense counsel.

Shack Affidavit, Ex. C (Letter of March 2, 1981). Hashemi's March 2, 1981 letter indicates he was aware that he was already in default; he nevertheless made no appearance in the suit and failed to obtain counsel to make an appearance for him. It was not until Hashemi received a letter from Shack, dated September 23, 1981, informing him conclusively that Iran had failed to authorize appointment of counsel on his behalf that he retained his own counsel. See Bergadano Affidavit, Ex. C; Complaint at 4.

Hashemi argues that defendants' actions "constituted a constructive agreement on the part of defendants to protect plaintiff's interests in the New York litigation, or [estop] defendants from disclaiming that they were retained in those actions." Cross-Motion for Summary Judgment at 3. The actions which Hashemi alleges constituted a constructive agreement on the part of the defendants included: (1) soliciting from Hashemi the summonses which had been served on him in the New York actions; (2) advising the Government of Iran that it should provide defense counsel; and (3) using the word "we" in regard to filing a notice of appearance, informing the court as to who would represent plaintiff, and monitoring the suits on plaintiff's behalf. The language Hashemi relies on, from Shack's letter of February 23, 1981, reads:

> I have received the summonses and notices of suit in the above referenced cases which you sent to me by letter of February 6, 1981. Since there was no complaint served, we are not required to file an answer. However, we must file a notice of appearance—we must inform the court who will represent you—within 20 days if you were personally served, or within 30 days if you were served by mail....

In the meantime, we are monitoring the suits and are informing the Foreign Ministry that the Government of Iran should provide you with defense counsel because the suits are based on your official acts as Senior Advisor to Bank Sepah.

Shack Affidavit, Ex. B.

■ Constructive agreements or quasi contracts are contracts implied in law, which impose or create by law a class of obligations "without regard to the assent of the party bound, on the ground that they are dictated by reason and justice, and which are allowed to be enforced by an action ex contractu." 17 C.J.S. *Contract* § 6, at 566–67 (1963). A contract implied in law is

> not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex aequo et bono* belongs to another. Duty, and not a promise or agreement or intention of the person sought to be charged, defines it. It is fictitiously deemed contractual, in order to fit the cause of action to the contractual remedy.

*Miller v. Schloss*, 218 N.Y. 400, 407, 113 N.E. 337, 339 (1916); *see Bradkin v. Leverton*, 26 N.Y.2d 192, 197, 309 N.Y.S.2d 192, 196, 257 N.E.2d 643, 645 (1970). Generally, the law of constructive agreements rests on the equitable principle that a person shall not be allowed unjust enrichment at the expense of another. *See Miller*, 218 N.Y. at 407, 113 N.E. at 339.

■ None of Shack's actions led to the unjust enrichment of any defendant. Moreover, the correspondence between Hashemi and Shack, read in its entirety, makes clear that defendants assumed no duty to represent Hashemi, but only the duty of trying to obtain authorization from Iran to appoint an attorney on his behalf. Shack's March 9, 1981 letter to plaintiff states:

We have sent a telex to the Foreign Ministry urging the Government to defend these suits. Our position is that the Government should do so to protect itself since it will ultimately be liable for any judgments resulting from the official acts of the defendants.

In the meantime, we will continue monitoring these suits on your behalf until the question of representation is resolved.

Shack Affidavit, Ex. D. Shack's September 23, 1981 letter to Hashemi further evidences that the only duty the defendants undertook was the duty of seeking authorization to appoint counsel for Hashemi:

As we indicated in our letters of February 23, and March 9, 1981, we have communicated with Iran to attempt to resolve the question of your representation in the above referenced suits. We have given Iran our legal opinions on the litigation. However, Iran has neither adopted our opinions nor authorized this firm to represent you in this litigation.

In the course of monitoring this lawsuit, we have learned that a default judgment was entered in the case of *Raji v. Hashemi*, Index No. 10601–81 Supreme Court of New York County, New York, on September 14, 1981; copies of the papers are enclosed. Although there is no record in the court files, we expect plaintiff's counsel may seek additional defaults in the *Boland* and *Boyle* cases. Since we have not received authorization to represent you, we would suggest that you retain counsel immediately in these cases to seek extensions of time to respond in the *Boland* and *Boyle* suits as appropriate and to remove the default judgment in the *Raji* suit.

Bergadano Affidavit, Ex. C.

■ Defendants' assumption of the duty of seeking authorization to obtain counsel for Hashemi did not create an attorney-client relationship. Although defendants offered in addition to "monitor" the suits, they never offered to take any action with respect to them. Hashemi knew of his obligation to take action within a very

short period to avoid defaults, and also knew that Shack's willingness to "monitor" the suits did not constitute such action. Indeed, Hashemi's letter to Shack indicates that he knew he was in default and was willing to wait until Shack heard from Iran before taking any action. Hashemi also knew that Shack was not going to take any such action until Iran authorized him to do so. He never asked Shack to take any such action, and never asked Shack how he should proceed. Shack therefore reasonably assumed that he had no duty to act.

## II. *Collateral Estoppel.*

■ New York follows the general law of collateral estoppel; once an issue of law or fact has been resolved against a party by a court, that party may generally not relitigate the issue in a subsequent lawsuit. *See LaRocca v. Gold,* 662 F.2d.144, 149 (2d Cir.1981). The New York Supreme Court has already determined that defendants here did not undertake to represent Hashemi in the three New York civil actions, and Hashemi is therefore estopped from relitigating this issue.

■ On December 15, 1981, Justice Price granted an order vacating plaintiff's default in one of the three New York actions (the "Raji action") on the ground that the default was excusable and plaintiff had demonstrated the existence of meritorious defenses to the claims of the plaintiffs in that action. Bergadano Affidavit at 5; *id.* at Ex. D. In denying a motion for reargument, Justice Price noted:

> [Hashemi] asserts as an excuse for his default the fact that in February of 1981 he forwarded the summons and notice of complaint to a law firm in Washington, D.C., known to him as counsel for the government of Iran. [Hashemi], apparently under the impression that he was being sued in his capacity as an "agent" of the government of Iran, sought representation through the government. The Washington firm did not *conclusively* notify defendant until some six months later that representation would not be provided.

Bergadano Affidavit, Ex. E, at 3 (*Raji v. Souri,* Index No. 19601/81, N.Y.Sup.Ct. (1981)). (emphasis in original). At that time, New York law provided that if the excuse proffered for the default was to be categorized as law office failure, the default would be reinstated. Bergadano Affidavit, Ex. E, at 4 (*Raji v. Souri*). *See Eaton v. Equitable Life Assurance,* 56 N.Y.2d 900, 453 N.Y.S.2d 404, 438 N.E.2d 1119 (1982) (overruled by statute, NY CPLR § 2005 (McKinney Supp.1983–84)). However, "[i]f the excuse proffered ... [could not] be termed a law office failure, traditional principles [would] apply and the default [would] be held correctly vacated." Bergadano Affidavit, Ex. E, at 4 (*Raji v. Souri, citing Swidler v. World-Wide Volkswagen Corp.,* 85 App.Div.2d 239, 448 N.Y.S.2d 20 (2d Dept.1982)). Justice Price held that Hashemi's excuse did not constitute law office failure:

> [Neither defendant Shack nor his Washington law firm] undertook to represent [Hashemi], and in fact clearly represented the government of Iran, from which permission was needed to authorize representation. [Hashemi] was notified of this fact on more than one occasion. Once stated, Washington counsel arguably had no further obligation to [Hashemi], and [Hashemi's] failure to answer cannot be coined a "law office failure."

Bergadano Affidavit, Ex. E, at 5 (*Raji v. Souri*). The defaults in the other two New York actions were similarly vacated. Bergadano Affidavit, Ex. G (*Boland v. Souri,* Index No. 26106/81, N.Y.Sup.Ct. (1981)); Ex. I (*Boyle v. Souri,* Index No. 26107/81, N.Y.Sup.Ct. (1981)). Both Justices Price and Smith determined that Hashemi's defaults were not the result of law office failure, since neither Shack nor his law firm had undertaken to represent Hashemi in those actions. Thus, Hashemi is now estopped from maintaining his legal malpractice action based upon the defendants' alleged legal malpractice in failing to protect his interests in the three New York actions.

Hashemi had a full and fair opportunity to litigate the issue in the prior cases, *see United Federation of Teachers Welfare Fund v. Kramarsky*, 451 F.Supp. 333, 337 (S.D.N.Y.1978), *aff'd* 650 F.2d 1310 (2d Cir. 1981), since he himself moved to vacate the defaults in those actions. Hashemi also had "a full and fair opportunity to contest the decision now invoked against him," *Thompson v. Galaxy Enterprises, Inc.*, 414 F.Supp. 198, 199 (S.D.N.Y.1976), but chose not to do so.

III. *Alleged Violation of the Code of Professional Responsibility.*

██ Hashemi's second cause of action is based on an alleged breach of fiduciary duty by defendants when they refused, absent a signed release from Hashemi, to submit a signed affidavit in connection with Hashemi's efforts to vacate the defaults. Complaint ¶¶ 19–22. The analysis above establishes that defendants did not undertake any duty other than the duty of seeking authorization from Iran to appoint counsel for Hashemi. Since no fiduciary duty was undertaken by defendants, Hashemi has no cause of action against them.

██ Hashemi also alleges, however, that "[d]efendants' entire course of conduct constitutes ... gross, reckless, [and] wanton indifference to professional responsibilities...." Complaint, ¶ 22. Plaintiff argues that "Disciplinary Rule 6–102 of the Code of Professional Responsibility explicitly provides that an attorney may not under *any* circumstances seek to induce one who has relied upon him to forego a potential claim for malpractice...." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Partial Summary Judgment at 23–24. Even if defendants' conduct was a violation of DR 6–102, however, the New York Court of Appeals has held that no cause of action arises against a lawyer by a third party for violation of DR 6–102 unless the "factual situation[ ] ... fall[s] within one of the acknowledged categories of tort or contract liability." *Drago v. Buonagurio*, 46 N.Y.2d 778, 779–80, 413 N.Y.S.2d 910, 911, 386 N.E.2d 821, 822 (1978). The evidence in this case establishes that no cause of action exists based on tort or contract liability. Therefore, even though a violation of the Code of Professional Responsibility may lead to disciplinary proceedings against a lawyer, it gives rise to no cause of action against the attorney. *See also, Brainard v. Brown*, 91 App.Div.2d 287, 289, 458 N.Y.S.2d 735, 736 (3rd Dept.1983).

Defendants' motion for summary judgment pursuant to Rule 56 is granted, and the complaint is dismissed with prejudice and costs.

SO ORDERED.