Susan Root JORDAN and Richard Jordan, Plaintiffs,

v.

LIPSIG, SULLIVAN, MOLLEN & LIA-PAKIS, P.C., Harry H. Lipsig, Esq., Robert Sullivan, Esq., Pamela A. Liapakis, Esq. and Edward P. Milstein, Esq., Defendants.

No. 86 CIV. 3752 (SWK).

United States District Court, S.D. New York.

May 21, 1988.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Presently before this Court is defendants' motion for partial summary judgment to dismiss the second count of plaintiffs' complaint, which seeks recovery against defendants based on Richard Jordan's ("Mr. Jordan") purported claim of loss of consortium and services. Plaintiffs, wife and husband, have brought suit to recover for defendants alleged legal malpractice in failing to commence a medical malpractice action for injuries to Susan Root Jordan ("Mrs. Jordan") prior to the expiration of the applicable statute of limitations period.

### Background

Unless otherwise indicated, these facts are not in dispute. On August 5, 1983, Mrs. Jordan consulted with the law firm of Lipsig, Sullivan & Liapakis, P.C. s/h/a Lipsig, Sullivan, Mollen & Liapakis ("Lipsig firm") concerning her putative medical malpractice claims. Mrs. Jordan met with Edward Milstein, Esq., an attorney at the firm. Mrs. Jordan was accompanied by her mother, Mrs. Judith Root. At this meeting, Mrs. Jordan signed a blank retainer agreement. *See* Exhibit C to Affidavit of Diane Kanka, Esq. ("Kanka Affidavit"). Plaintiffs assert, and defendants do not dispute, that Mrs. Jordan signed various other forms, including medical authorization forms. Affidavit of Adrienne Deluca ("Deluca Affidavit"), at ¶ 6. Mr. Jordan, who has been married to Mrs. Jordan since before August 5, 1983, did not attend this meeting with Milstein; he was assigned at the time to duty for the United States Army at Fort Myer, Virginia. Affidavit of Susan Root Jordan ("Mrs. Jordan Affidavit"), at ¶ 2. During her meeting with Milstein, Mrs. Jordan informed him that she was married. *Id.*

Mrs. Jordan went to the Lipsig firm in order to discuss the possibility of suing individual doctors and institutions which she believed caused her to suffer severe personal injuries, including the onset of toxic megacolon, the perforation and removal of her colon, a total hysterectomy and bilateral oophorectomy. *Id.* at ¶ 3. She states that she retained the law firm at this first meeting and intended that they commence and prosecute a medical malpractice action on her behalf. *Id.*[1] In the course of her subsequent contacts with the law firm, none of the lawyers with whom she had contact advised her of the existence of a cause of action or claim that her husband could bring to recover for loss of consortium or services. *Id.* at ¶ 5. In his affidavit, Milstein states that his firm did not consider taking any action on behalf of Mr. Jordan since they were not yet sure whether they would prosecute Mrs. Jordan's claims. Affidavit of Edward Milstein ("Milstein Affidavit"), at ¶ 3.

Mr. Jordan never formally retained the Lipsig firm. He admits that he did not retain the Lipsig firm, did not sign a retainer and had no intention for the law firm to sue and collect money on his behalf. Deposition of Mr. Jordan, at p. 148, attached as Exhibit B to Kanka Affidavit. Mr. Jordan never met or spoke with defendants, and no one from the Lipsig firm contacted Mr. Jordan. Affidavit of Richard Jordan, at ¶¶ 2, 3. He states that he did not learn of the existence of his putative cause of action until he met with his present attorneys. *Id.* at ¶ 4. Mr. Jordan asserts that he would have retained the Lipsig firm to prosecute his loss of consortium claim if he had known that such a cause of action existed. *Id.* at ¶ 3.

### Discussion

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law." Rule 56(c). In testing whether the movant has met this burden, the Court must resolve all ambiguities against the movant. *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1187 (2d Cir.1987) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). To avoid summary judgment, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (interpreting the "genuineness" requirement).

Plaintiffs argue that a genuine dispute exists "as to whether the manner in which defendants sought to terminate their attorney/client relationship was properly effectuated." Plaintiff's Memorandum of Law in Opposition, at p. 3. While the issue of termination may be in dispute, it is not material to the present motion. Defendants argue that Mr. Jordan cannot maintain his loss of consortium claim since he was never a client of the Lipsig firm and had no contact with any of its lawyers. The parties agree that Mrs. Jordan had some initial contact with the Lipsig firm, that Mr. Jordan never retained the Lipsig firm and had no direct contact with any of its lawyers and that none of the lawyers with whom Mrs. Jordan had contact informed her or her husband that he had a cause of action for loss of consortium. Though the issue of termination may be material to the first cause of action, it is not material to this discussion. A duty to terminate an attorney-client relationship cannot arise if no such relationship exists in the first place. The Court will therefore consider whether Mr. Jordan ever became a client of the Lipsig firm, and then whether he can maintain an action against defendants.

■ In New York, the elements of a legal malpractice action are (1) the existence of an attorney-client relationship, (2) negligence on the part of the attorney or some other conduct in breach of the rela-

---

**1.** While the scope of Mrs. Jordan's retention of the Lipsig firm, including the date of its termination, is sorely in dispute, that dispute is not material to the present discussion, which focuses on whether Mr. Jordan can maintain his action against defendants.

tionship, (3) proximate causation and (4) proof that but for the attorney's alleged negligence the plaintiff would have succeeded in the underlying action. *Hanlin v. Mitchelson*, 794 F.2d 834, 838 (2d Cir.1986) (citations omitted); *Hashemi v. Shack*, 609 F.Supp. 391 (S.D.N.Y.1984) (citation omitted). Defendants argue that since Mr. Jordan never retained the Lipsig firm or had any contact with any of its attorneys, Mr. Jordan was not a client of the firm and thus cannot sue it for legal malpractice. Plaintiffs argue that defendants' failure to inform either plaintiff of the existence of the loss of consortium action caused Mr. Jordan to understand that he would not be a plaintiff in the underlying action. Plaintiffs argue further that since loss of consortium is a derivative action and since Mr. Jordan could not bring a separate action, defendants had a professional duty to inform him or his wife of this claim.

■ Since an attorney-client relationship is essentially contractual, ordinary "rules governing contract formation determine whether such a relationship has been created." *Hashemi, supra,* 609 F.Supp. at 393. Since "[t]he initial arrangements for representation are often informal ..., it is necessary to look at the words and actions of the parties." *Id.* (citation omitted). Plaintiffs claim that *Hashemi* is inapposite since in that case the Court found that a letter written by Hashemi to the attorney-defendants clearly evidenced his understanding that the firm would not represent him. 609 F.Supp. at 394. Instead, plaintiffs argue, in the present case there is a question as to whether defendants were representing plaintiffs. While this Court recognizes the presence of a dispute concerning the representation of Mrs. Jordan, plaintiffs have made no showing that defendants ever represented Mr. Jordan.[2] The facts lead to the inescapable conclusion that no attorney-client relationship existed between Mr. Jordan and defendants. He had no contact with the firm, never met or spoke with any of the firm's attorneys, never contacted the firm in any way and had no intention for the firm to represent him in any way. Accordingly, this Court finds that an attorney-client relationship did not exist directly between Mr. Jordan and defendants.

■ While defendants would end the discussion at this point, the Court finds it necessary to consider whether Mr. Jordan may yet maintain his action against defendants despite the fact that only his wife, and not he, was defendants' client. In New York, courts have often repeated the rule that, absent proof of fraud, collusion, malicious acts or other special circumstances, a plaintiff may not sue an attorney for simple negligence absent privity of contract.[3] *See, e.g., Michalic by Nakovics v. Klat,* 128 A.D.2d 505, 512 N.Y.S.2d 436, 438 (2d Dept. 1987) (non-client mother could not sue father's attorney for attorney's mere negligence in handling custody litigation); *Viscardi v. Lerner,* 125 A.D.2d 662, 510 N.Y. S.2d 183, 185 (2d Dept.1986) (intended beneficiaries of will could not sue attorney who drafted will); *Kramer v. Belfi,* 106 A.D.2d 615, 482 N.Y.S.2d 898, 900 (2d Dept.1984) (non-client will beneficiaries cannot sue executor's attorney); *Calamari v. Grace,* 98 A.D.2d 74, 469 N.Y.S.2d 942, 945 (2d Dept. 1983) (discussion of privity requirements in legal malpractice in context of malpractice action against title insurers); *Harder v. McGinn,* 89 A.D.2d 732, 454 N.Y.S.2d 42, 43 (3d Dept.), *aff'd,* 58 N.Y.2d 663, 458 N.Y.S.2d 542, 444 N.E.2d 1006 (1982) (former spouse of attorney-defendant's client could not sue for attorney's negligent representation of spouse-client on theory that spouse-client owed money to non-client spouse); *Drago v. Buonagurio,* 61 A.D.2d 282, 402 N.Y.S.2d 250, 252 (3d Dept.), *rev'd*

---

**2.** Plaintiffs may be arguing that defendants were representing Mr. Jordan by implication since his claim was derivative to those of Mrs. Jordan. If so, plaintiffs have not been clear in their presentation. Plaintiffs have merely stated, without direct support, that defendants had a duty to inform plaintiffs of the presence of a potential loss of consortium action.

**3.** Plaintiffs have not suggested that defendants acted fraudulently, collusively or maliciously, and the question thus becomes whether other special circumstances warrant a deviation from the privity requirement.

*on other grounds,* 46 N.Y.2d 778, 413 N.Y. S.2d 910, 386 N.E.2d 821 (1978) (non-client could not sue attorney who had negligently commenced action against him); *see also Quintel Corp., N.V., Citibank, N.A.,* 589 F.Supp. 1235, 1241 (S.D.N.Y.1984).

This Court has discovered only one decision which has rejected the privity requirement in favor of a rule that would balance the relevant interests of the parties. *Baer v. Broder,* 106 Misc.2d 929, 436 N.Y.S.2d 693, 696 (Sup.Ct. Suffolk County 1981), *aff'd on other grounds,* 86 A.D.2d 881, 447 N.Y.S.2d 538 (2d Dept.1982). The Appellate Division affirmed, though it did so on the basis that "the relationship of the [non-client] plaintiff to the underlying wrongful death action is unique and demands an exception to the general rule regarding privity." 447 N.Y.S.2d at 539. In *Baer,* the plaintiff, as executrix of the estate of her deceased husband, had retained an attorney to prosecute a wrongful death action against the hospital and attending physicians for their alleged malpractice in treating the deceased. 436 N.Y.S.2d at 695. Plaintiff eventually sued the attorney in her personal capacity alleging negligent failure to prosecute. *Id.* at 696. Defendant defended on the basis that the plaintiff had retained him in her capacity as executrix and that he consequently could not be liable to her in her individual capacity since privity was lacking. *Id.* The Appellate Division rejected defendant's attempts to distinguish plaintiff's interests as executrix from her individual interests since she had a real interest in the outcome as a distributee. 447 N.Y.S.2d at 539.

Since this Court has jurisdiction based on diversity of the parties, it must apply the substantive laws of New York. *Stafford v. International Harvester Co.,* 668 F.2d 142, 148 (2d Cir.1981). This Court believes that the issues presented in this action have not been directly ruled upon by a state court and thus must estimate how the New York Court of Appeals would rule under like circumstances. *Id.* Given the plethora of decisions upholding the privity requirement, this Court is bound to apply this requirement. Nonetheless, the Court believes that the facts of this case call for the

carving out of another exception to the strict requirement of privity.

This Court reads the privity cases to stand for the proposition that third parties injured by the actions of an attorney who is negligent vis-a-vis his or her own client cannot recover from the attorney for damages caused by such negligence. In these cases, unlike the situation in *Baer,* the courts implicitly found that the harm suffered by the plaintiffs in those actions to be either not foreseeable or too remote. *Cf. Baer, supra,* 447 N.Y.S.2d at 539 (affirming on the special grounds that if "defendant breached a duty to the plaintiff in that action the foreseeable harm to plaintiff individually as the widow was the obvious and the direct result thereof."). In the present case, and as the discussion below suggests, the failure of defendants to prosecute Mrs. Jordan's claims would necessarily and directly bar Mr. Jordan's derivative claim for loss of consortium and his damages were thus completely foreseeable.

■ A claim for loss of consortium or services is a derivative action, and in the common law of New York, does not exist "independent of the injured spouse's right to maintain an action for injuries sustained." *Liff v. Schildkrout,* 49 N.Y.2d 622, 427 N.Y.S.2d 746, 749, 404 N.E.2d 1288, 1291 (1980). A New York supreme court has interpreted this rule to mean that these claims are derivative "only in the sense that the loss of consortium derives from the occurrence of injury to one spouse and the very fact of the marital relationship." *Haspil v. Church of St. Cyril,* 128 Misc.2d 968, 491 N.Y.S.2d 914, 917 (Sup.Ct. New York County 1985) (citing *De Angelis v. Lutheran Medical Center,* 84 A.D.2d 17, 22, 445 N.Y.S.2d 188 (2d Dept.1981), *aff'd,* 58 N.Y.2d 1053, 462 N.Y.S.2d 626, 449 N.E. 2d 406 (1983)). A spouse cannot recover for loss of consortium unless the defendant is found to be a tortfeasor in causing damages to the other spouse. *Id.* (citing *Belanoff v. Grayson,* 98 A.D.2d 353, 471 N.Y.S. 2d 91, 94 (1st Dept.1984); *Maidman v. Stagg,* 82 A.D.2d 299, 441 N.Y.S.2d 711, 713 (2d Dept.1981)). In affirming the right of a wife to recover for loss of consortium,

the Court of Appeals stated that "[w]here there is a cause of action brought by the injured husband pending, the wife's consortium action, if not time-barred, should be joined with her husband's claim. Where, however, the husband's cause of action has been terminated either by judgment, settlement or otherwise, that should operate to bar the wife's cause of action for consortium." *Millington v. Southeastern Elevator Co.*, 22 N.Y.2d 498, 507–08, 293 N.Y.S. 2d 305, 312, 239 N.E.2d 897, 902 (1968). In interpreting this decision, the supreme court decided, however, that a spouse could bring a claim for loss of consortium independently of the injured spouse when both claims had initially been timely commenced, even though the injured spouse's claim had previously settled. *Haspil, supra*, 491 N.Y.S.2d at 916. The *Haspil* court simply read the Court of Appeals' language in *Millington* to "bar the *commencement* of a spouse's cause of action for loss of consortium after the termination of the injured spouse's cause of action." *Id.* (emphasis in original).

 The problem in this case is that plaintiffs never instituted an action allegedly as a direct result of defendants' alleged malpractice. Although Mr. Jordan was not a client of defendants, his claim was intricately interwoven with that of Mrs. Jordan. New York law is clear that he could not bring an action separate and apart from that of his wife once his wife's action was terminated by the running of the statute of limitations. *See Millington, supra*, 293 N.Y.S.2d at 312, 239 N.E.2d at 902. Defendants are attempting to avoid liability for their alleged negligence by arguing that Mr. Jordan should have independently contacted them to institute a loss of consortium action. This Court finds such a requirement unreasonable. A spouse should reasonably be able to rely on the representation afforded to the injured

spouse to inform him or her of his or her potential derivative claims for loss of consortium.[4] Therefore, this Court finds that to the extent that defendants were negligent in not timely filing suit on behalf of Mrs. Jordan, Mr. Jordan may seek to recover against defendants for his potential claim of loss of consortium. Like his wife, Mr. Jordan must establish his case for legal malpractice at trial.

### Conclusion

For the reasons stated above, defendants' motion for summary judgment dismissing the second count is denied.

SO ORDERED.

---

4. In arguing that Michigan common law should not be expanded to allow for a loss of consortium action by a child, the Michigan Supreme Court noted that "presently it may well be malpractice for an attorney to fail to become informed as to the marital status of a client and not advise the non-injured spouse of his or her loss of consortium rights." *Berger v. Weber*, 411 Mich. 1, 303 N.W.2d 424, 437 n. 57 (1981) (Levin, J., dissenting) (quoting Belli & Wilkinson, Loss of Consortium: Academic Addendum or Substantial Right? 16 *Trial* (No. 2) 20 (February, 1980)).