**Glenn HARZ and Land Mine Enterprises, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 88 CIV. 5132 (SWK).**

United States District Court, S.D. New York.

April 14, 1989.

Wallach, Turkish & Wallach, New York City by Gilbert Wallach, Liebman, Adolf & Charme, New York City by Stephen M. Charme, for plaintiffs.

Rudolph W. Giuliani, U.S. Atty., for the Southern District of New York, New York City by James L. Cott, Asst. U.S. Atty., for U.S.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiffs have brought suit against the United States for the alleged negligence of an Assistant United States Attorney in the handling of an earlier proposed settlement between plaintiffs and the government. Jurisdiction is premised on the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) and 2671 *et seq.* The United States has moved pursuant to Fed.R.Civ.P. 12(b) to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim; in the alternative, defendant moves for summary judgment pursuant to Fed.R.Civ.P. 56. Specifically, defendant contends that dismissal is warranted because (1) plaintiff Land Mine Enterprises ("Land Mine") failed to exhaust its administrative remedies, (2) plaintiffs did not timely file a notice of claim, thus depriving the court of jurisdiction, (3) plaintiffs' claims are barred by the misrepresentation exception to the FTCA, (4) plaintiffs do not state a claim for relief under New York law, and (5) the issues raised by plaintiffs have previously been litigated, thus collaterally estopping plaintiffs from raising them now.

## BACKGROUND

Land Mine entered into a construction contract in April, 1978 with a company called Sylvester Builders for the renovation of a building in the Bronx. Affidavit of Glenn Harz, dated November 15, 1988, at ¶ 2. Performance and payment bonds were obtained from NHIC and were written by Norman Reed, an undercover operative working for the FBI. The FBI had obtained NHIC's cooperation in "Operation Frontload", a covert scheme designed to expose fraudulent activity in the government subsidized construction industry. *Id.* at ¶¶ 4–5. Plaintiffs contend that Reed was not properly supervised and wrote the Land Mine bonds without approval. *Id.* at ¶ 7. When Land Mine notified NHIC that a default on the construction contract was imminent, NHIC denied the authenticity of the bonds and refused to perform. *Id.* at ¶¶ 8–12. Land Mine sued Sylvester Builders and the New Hampshire Insurance Company ("NHIC") in February, 1981 based on the latter's alleged repudiation and breach of the bonds. *Id.* at ¶¶ 3, 13; *see Land Mine Enterprises v. Sylvester Builders, et al.,* No. 81 Civ. 0931 (CES). NHIC impleaded the United States, and government attorneys thereafter assumed responsibility for the defense. *Id.* at ¶ 14.

Plaintiffs and the government agreed in April, 1984, to settle the action for $1.8 million, and on October 18, 1984 Judge Charles E. Stewart of this Court "so ordered" a stipulation of settlement signed by the parties. Harz Affidavit at ¶¶ 15–6; Complaint at ¶ 8; *see* Exhibit A to Declaration of Peter C. Salerno, dated June 25, 1985, attached as Exhibit C to Declaration of James L. Cott. Plaintiffs received a check from the government in the amount of $1.8 million on or about November 10, 1984. *Id.* at ¶ 16. By letter dated December 7, 1984, the government informed plaintiffs that the settlement had not received approval from the Deputy Attorney General as required by 28 C.F.R. §§ 0.160–61, and that the settlement therefore is "of no effect". Exhibit A to Cott Decl. The letter explained that, while the government was working to resolve the situation, plaintiffs should do everything possible to pre-serve the funds. Plaintiffs agreed not to disburse approximately $1.26 million in funds held in escrow. Exhibit B to Cott Decl. Plaintiffs originally agreed not to disburse funds until January 15, 1985, and then over a series of letters agreed to extend that date at least until March 1, 1985.

On June 26, 1985, Judge Stewart granted the government's application for a temporary restraining order, which enjoined plaintiffs from disbursement of the funds. In a declaration submitted in support, Assistant United States Attorney Peter C. Salerno states that "[s]ince December, 1984 our office and the Department of Justice in Washington have been intensively considering the issues raised by the fact that a settlement for a huge sum of money was entered into without approval, as well as the merits of the proposed settlement. After careful consideration, the decision was made to submit this motion pursuant to Fed.R.Civ.P. 60(b) to set aside the settlement." Salerno Declaration at ¶ 5. Judge Stewart vacated the settlement, dismissal and judgment, and ordered the repayment of the monies disbursed. *Land Mine Enterprises v. Sylvester Builders,* No. 81 Civ. 0931 (CES), slip op. at 7 (S.D.N.Y. July 29, 1985). Plaintiffs returned the money, the complaint was reinstated, discovery recommenced and the Honorable Leonard Bernikow, U.S. Magistrate, tried the case in July, 1987, the resolution of which is *sub judice.* Harz Affidavit at ¶ 20.

Plaintiff Harz filed an administrative claim on July 28, 1987 with the Department of Justice, which denied the claim by letter dated January 25, 1988 on statute of limitations grounds. Complaint at ¶ 2. Plaintiffs commenced this action on July 22, 1988.

## DISCUSSION

The FTCA waives the government's sovereign immunity to suit for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private per-

son, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). As is generally true with waivers of immunity, "the terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed. 2d 607 (1980). The terms of the statute must be complied with strictly. *O'Rourke v. Eastern Air Lines, Inc.*, 730 F.2d 842, 856 (2d Cir.1984) (citing *United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979)). The various statutory exceptions, however, are not to be construed broadly; instead, the "proper objective of a court attempting to construe one of the subsections of 28 U.S.C. § 2680 is to identify 'those circumstances which are within the words and reason of the exception'—no less and no more." *Kosak v. United States*, 465 U.S. 848, 853 n. 9, 104 S.Ct. 1519, 1523 n. 9, 79 L.Ed.2d 860 (1984) (citation omitted).

■ The Court must first examine the nature of plaintiffs' claim against the government in order to determine whether plaintiffs have satisfied the "law of the place" requirement of the FTCA.[1] The statute requires that "a plaintiff's cause of action ... be 'comparable' to a 'cause of action against a private citizen' recognized in the jurisdiction." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir.1988) (quoting *C.P. Chemical v. United States*, 810 F.2d 34, 37 (2d Cir.1987)). Thus, plaintiffs' cause of action must first have a private party analog under New York law, and second, "must satisfy the necessary elements of that comparable state cause of action." *Id.* (citations omitted).

The government has made various arguments concerning the nature of plaintiffs' claim in an effort to establish that the complaint should be dismissed. In relation to the law of the place requirement, the government characterizes plaintiffs' claim as a negligent violation of a regulation and argues that violation of a regulation has no state law analog and does not state a claim under the FTCA. Government's Memorandum of Law at 21–23. The government stresses that the Second Circuit has recently noted that the

> FTCA's "law of the place" requirement is not satisfied by direct violations of the Federal Constitution, (citations omitted), or of federal statutes or regulations standing alone, (citations omitted). The alleged federal violations also must constitute violations of duties "analogous to those imposed under local law", (citations omitted).

*Chen, supra*, 854 F.2d at 626. The government also argues that violation of a regulation does not constitute "negligence *per se*" under New York law, nor would it constitute the extreme behavior anticipated in New York law by a claim for intentional infliction of emotional distress. *Id.* at 24–26.

Plaintiffs respond to the government's arguments by stressing that they seek recovery for the Assistant United States Attorney's failure "to exercise the due care required of an attorney" under New York law. Plaintiff's Memorandum of Law at 15, 20, 23, 26. As the Court reads plaintiffs' argument, their putative state law claim is one for legal malpractice. If plaintiffs indeed intend to claim legal malpractice, they have failed to do so.

In New York, the elements of a legal malpractice action are (1) the existence of an attorney-client relationship, (2) negligence on the part of the attorney or some other conduct in breach of the relationship, (3) proximate causation and (4) proof that but for the attorney's alleged negligence the plaintiff would have succeeded in the underlying action. *Hanlin v. Mitchelson*, 794 F.2d 834, 838 (2d Cir.1986) (citations

---

1. The Court discusses this issue first because its resolution will help define defendant's other claims. In particular, it is important to define the nature of the claim in order to determine when the claim accrued and to decide what effect Judge Stewart's prior determinations have on the present dispute.

omitted); *Hashemi v. Shack*, 609 F.Supp. 391 (S.D.N.Y.1984) (citation omitted); *see Jordan v. Lipsig, Sullivan & Liapakis*, 689 F.Supp. 192, 194–95 (S.D.N.Y.1988). In New York, courts have often repeated the rule that, absent proof of fraud, collusion, malicious acts or other special circumstances, a plaintiff may not sue an attorney for simple negligence absent privity of contract. *See, e.g., Michalic by Nakovics v. Klat*, 128 A.D.2d 505, 512 N.Y.S.2d 436, 438 (2d Dept.1987) (non-client mother could not sue father's attorney for attorney's mere negligence in handling custody litigation); *Viscardi v. Lerner*, 125 A.D.2d 662, 510 N.Y.S.2d 183, 185 (2d Dept.1986) (intended beneficiaries of will could not sue attorney who drafted will); *Drago v. Buonagurio*, 61 A.D.2d 282, 402 N.Y.S.2d 250, 252 (3d Dept.), *rev'd on other grounds*, 46 N.Y.2d 778, 413 N.Y.S.2d 910, 386 N.E.2d 821 (1978) (non-client could not sue attorney who had negligently commenced action against him); *see also Quintel Corp., N.V., Citibank, N.A.*, 589 F.Supp. 1235, 1241 (S.D.N.Y.1984).

In *Jordan, supra,* this Court found itself bound to apply the privity rule in that diversity case unless an exception based on special circumstances could be found. 689 F.Supp. at 196. Plaintiffs in that case brought a legal malpractice action for failure to institute an action prior to the running of the statute of limitations. One of the plaintiffs, Mrs. Jordan, had contacted the defendant law firm concerning a claim for medical malpractice. Her husband, Mr. Jordan, had no contact with the law firm, and the parties agreed that there was no privity. Nonetheless, plaintiffs argued that his claim for loss of consortium was derivative to his wife's medical malpractice claim and that the extinguishment of his wife's claim by the law firm's negligence necessarily precluded him from bringing an action. Under these circumstances, the Court concluded Mr. Jordan could maintain his legal malpractice claim against the law firm even in the absence of privity. 689 F.Supp. at 196–97.

The circumstances of the present case do not compel a similar result. Plaintiffs are suing the lawyers representing their adversary. The government never represented plaintiffs nor had any special fiduciary relationship with them. While a government lawyer may generally owe a duty to the public, plaintiffs argue that the Assistant violated a duty incumbent upon private lawyers. Quite unlike the situation in *Jordan, supra,* in which the plaintiffs' claims were extinguished by the alleged negligence of the defendants, plaintiffs here have prosecuted their case and will recover whatever damages, if any, the Court deems appropriate. The Court is not aware of any cases standing for the proposition that one party may sue the lawyer of the opposing party for negligence in the negotiation of a settlement. The privity requirement under New York law simply does not allow such a conclusion. Plaintiffs, therefore, have not stated a claim for a state cause of action in tort, and have not met the "law of the place" requirements of the FTCA. Dismissal of the complaint is warranted for this reason alone since the Court is without subject-matter jurisdiction.[2]

■ In the alternative, the Court concludes that plaintiffs have not stated a cause of action in tort because they have not suffered any injury. In determining that plaintiffs had not detrimentally relied upon the government's representation that the case could be settled, Judge Stewart concluded that "this is not a case in which plaintiffs lost any legal right, either vested or contingent, or suffered any change in their status." *Land Mine Enterprises v. Sylvester Builders*, No. 81 Civ. 0931 (CES), slip op. at 4 (S.D.N.Y. July 29, 1985), attached as Exhibit D to Cott Decl. Vacatur of the settlement and reinstatement of the

---

**2.** The Court notes that plaintiffs have not satisfied other elements of a legal malpractice claim. For example, plaintiffs cannot allege that plaintiff would have succeeded in the underlying action for the simple reason that the action remains viable and, indeed, plaintiffs may fully recover.

complaint would merely return the parties to the *status quo ante*. *Id.* at 3. The damages they seek to recover in this action represent the costs associated with litigating the case, costs which they would normally incur in any lengthy litigation. The fact that they thought they were going to settle, and then did not, does not create an independent right of recovery against opposing counsel. Any damages they suffered by virtue of the aborted settlement would stem from plaintiff's reliance on the fact of the settlement, reliance which Judge Stewart determined was not reasonable. *Id.* at 5. Plaintiffs cannot succeed on a misrepresentation theory first, because Judge Stewart has already determined the lack of detrimental or reasonable reliance, and second, because the FTCA does not apply by its very terms to actions arising out of misrepresentation. 28 U.S.C. § 2680(h). Plaintiffs have all but conceded this point in arguing that their claim is one for legal malpractice, and not misrepresentation. The Court thus concludes that plaintiffs have not satisfied the private analog requirements and have not stated a claim for relief under New York law.[3]

## CONCLUSION

For the reasons stated above, the Court grants defendant's motion to dismiss the complaint for lack of subject-matter jurisdiction. The complaint is ordered dismissed.

SO ORDERED.

**3.** The Court does not reach the merits of the      government's arguments not discussed above.